## PIONEER TELEPHONE & TELEGRAPH CO. v. STATE et al.

No. 6464—Opinion Filed Sept. 25, 1917.

(167 Pac. 995.)

(Syllabus by the Court.)

**1. Telegraphs and Telephones — Rates — Basis for Determination.**

What a telephone company is entitled to demand in order that it may have just compensation is a fair return upon the reasonable value of its property as a going concern, as distinguished from its physical value as a mere naked plant. This value is not obtained by adding up a number of separate items, but by taking a comprehensive view of each and all of the elements of property, tangible and intangible, including property rights, and considering them all, not as separate things, but as inseparable parts of one harmonious entity, and exercising the judgment as to the value of that entity.

**2. Same—Single Exchange—Value of Plant.**

Where, in a rate case against a telephone company whose lines extend throughout the state, it is charged that the exchange rates of a single municipality are unreasonable, the Corporation Commission in finding a basis for the adjustment of such rate should, as far as practicable, separate the valuation of the toll plant from the value of the exchange plant and equitably apportion between them the value of the property used in common in giving both classes of service.

**3. Same—Depreciation Fund.**

Where the evidence shows and the commission finds that the plant is kept in a high state of efficiency, and charges are made in rates for the purpose of counteracting or preventing depreciation by replacement, no

necessity exists for building up a fund to be used for the purpose of counteracting purely theoretical depreciation.

**4. Corporation Commission — Appeal—Constitutional Provisions.**

Section 22, art. 9, Williams' Constitution, provides: "In no case of appeal from the commission, shall any new or additional evidence be introduced in the Supreme Court. * * * The Supreme Court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising under such appeal: Provided, however, that the action of the commission appealed from, shall be regarded as prima facie just, reasonable, and correct; but the court may, when it deems necessary, in the interest of justice, remand to the commission any case pending on appeal, and require the same to be further investigated by the commission, and reported upon to the court (together with a certificate of such additional evidence as may be tendered before the commission by any party in interest), before the appeal is finally decided."

Appeal from the Corporation Commission.

Proceedings by the State of Oklahoma and James W. Bolen against the Pioneer Telephone & Telegraph Company. From an order of the Corporation Commission, fixing a schedule of rates for exchange service in the city of Ada, defendant appeal. Cause remanded to Corporation Commission for further investigation and report and for a return of the record to Supreme Court, with certificate of such additional evidence as may be tendered before the commission within 60 days from date of order.

S. H. Harris, Claude Nowlin, J. R. Spielman, and M. S. Singleton, for plaintiff in error.

S. P. Freeling, Atty. Gen., and Jno B. Harrison, Asst. Atty. Gen., for defendants in error.

KANE, J. This is an appeal from an order of the Corporation Commission fixing a schedule of rates to be charged by the Pioneer Telephone & Telegraph Company for exchange service in the city of Ada. At the time the complaint herein was filed the telephone company was charging for exchange service at Ada the following rates per month:

For business single line_____$2 50
For business extension line_____ 1 00
For PBX sets, per line_____ 1 00
For residence single line_____ 1 50
For residence two-party line_____ 1 25
For residence extension sets_____ 50

The complainant alleged that these rates were unreasonable, and prayed the Corporation Commission to reduce them to an equitable basis. The answer of the defendant specifically denied that the rates charged for exchange service in the city of Ada were unreasonable, and alleged that, on the contrary, said rates were inadequate to insure the company a fair return upon the reasonable value of its property used for the purpose of giving such service. Wherefore, it prayed to be permitted to increase its exchange rates in the city of Ada to $2.50 per month for single line business telephones, $2 per month for single line residence telephones, and $1.50 per month for two-party line residence telephones. After very full hearings, held at several convenient points in the state, the Corporation Commission promulgated an order fixing the rates to be charged per month as follows:

For business single line phone_____$2 00
For business extension line_____ 1 00
For business PBX line _____ 1 00
For residence single line _____ 1 00
For residence two-party line_____ 75
For residence extension line_____ 50

This order is the one here for review in this proceeding. The evidence adduced at the trial on behalf of the complainant consisted of certain statistical exhibits prepared by the company and filed with the Corporation Commission for its information, which purport to cover all details of the operation of the telephone exchange of the defendant in the city of Ada, including the value of its entire system, and the comparative value of its property used in the public service at Ada, and the relation between the business of the Ada exchange and that of the telephone company as a whole. Mr. George P. Player, the telephone expert and engineer of the Corporation Commission, explained these statistical exhibits, and drew certain expert deductions therefrom as to the valuation of the defendant's property, the proportion thereof that was employed for the public service at Ada, and the returns thereon received by the company. The evidence offered in behalf of the company consisted of tabulated statements prepared by the company for this particular case, which purported to constitute a complete inventory of its property connected with its exchange at Ada; also all property in or immediately connected with the Ada exchange that was used in connection with the toll plant, separating in the schedules the property that was used for toll purposes from that used for exchange purposes. These tabulated statements were supplemented by deductions drawn therefrom by the company's experts and engineers. All of these statements introduced in evidence by the respective parties and the oral evidence of the experts in

relation thereto, together with the elaborate findings and conclusions of the Corporation Commission, are set out in full in the briefs, and, with arguments of counsel, make two quite pretentious volumes of 353 and 110 pages, respectively, of printed matter. From a careful study of this mass of learning and expert opinion on the subject of telephone and rate regulation, we gather that there is no difference of opinion between counsel for the respective parties as to the rights of the telephone using inhabitants of Ada to have a reasonable rate fixed by the telephone company for exchange service at that point, or that, on the other hand, the company is entitled to demand for such service a fair return upon the reasonable value of its property as a producing factor at the time it is being used by the public. Both parties also seem to recognize the practical necessity for establishing and maintaining level rates for exchange services.

The parties being in accord as to these points, we will confine ourselves as nearly as may be to the specific elements considered by the commission in fixing the valuation of the plant which council contend are erroneous. The Corporation Commission, it appears, proceeded upon the theory that to the value of the property devoted to the giving of exchange service at Ada should be added a proportionate part of the entire value of the property of the defendant devoted to the furnishing of long-distance or toll service in the entire state; in other words, that the total value of the property devoted purely to exchange service, and a proportionate part of the value of the property devoted to the giving of long-distance or toll service, would be the amount upon which the company was entitled to returns for the furnishing of exchange service, and that to the revenues from exchange service at Ada should be added all revenues derived from toll service in and out of that city. The reason given by the commission for this basis of apportionment is that, inasmuch as the company owns and operates as a whole all of the exchanges and its toll plants within the state, and the revenues accruing from both classes of service are placed to the credit of the company, and all expenses incident to the maintenance and operation of both toll and exchange plants are paid out of such revenues, the toll and exchange properties of the company should be regarded as inseparable factors or elements in the general property, both making a single industrial and commercial entity. Upon this point the contention of counsel for the company is that, in passing upon the reasonableness of the exchange rates, the value of the property devoted to the giving

of exchange service should be separated from the value of the property devoted to giving toll or any other service at Ada, and that in considering this value of the Ada exchange plant, no additions should be made thereto on account of the toll property within the Ada exchange or anywhere else in the state.

Generally, in fixing rates for a telephone company engaged in furnishing services throughout the state, regard must be had at the outset for the value of the property of the company as a whole. If the return on the value of the property as a whole is found to be reasonable, it then becomes necessary to determine whether the rate classifications are proper and reasonable as between the various classes of users and the different communities or municipal units served within the state. This for the reason that it is desirable that rates as a whole be made uniform and reasonable as between individuals and communities of the same class. Whilst it may be difficult to fix rates for any particular exchange based upon the actual investment in that exchange at any given time, it is conceivable that in the process of general rate making the inhabitants of one of the municipal units connected with the service system as a whole may be unreasonably discriminated against. This, we understand, it is alleged is the situation at Ada. It is merely the rate for exchange service at Ada that is alleged to be unreasonable, and the question is, What elements should be considered in ascertaining the value of the plant for the adjustment of this rate, if found to be unreasonable? Generally, when rates for a specific service are in controversy, there must be assigned to each business carried on by the public service corporation that proportion of the total value of the property which will correspond to the extent of its employment in that business. Simpson v. Shepherd, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. The rule, as applicable to telephone companies, is frequently found stated somewhat as follows: In order that local exchange rates may be reasonably adjusted, it is desirable that as far as possible they shall not be entangled with the cost of the long-distance service, and therefore the valuation of the toll plant should be separated from the valuation of the exchange plant as far as practicable. Report of B. C. and William B. Jackson, experts to the Massachusetts Highway Commission, 17 Mass. H. C. R., 2 R. 11; In re Application of Southern Bell Tel. Co. to increase rates at Wilmington, N. C., 11 N. C. C. R. 243; In re Application of Interurban Tel. Co. for au-

thority to increase rates, 6 Wis. R. C. R. 647. Such a separation of investment and revenue and expense accounts is required by the Interstate Commerce Commission by rule as follows:

"Accounts should show fixed capital, operating revenues, and operating expenses pertaining solely to any exchange or toll system or common to two or more systems. * * * (a) Telephone companies should keep their fixed capital accounts in such manner as will enable them to show, when so required by the commission, (1) the cost of fixed capital devoted solely to any exchange system, (2) the cost of fixed capital devoted solely to any toll system, and (3) the cost of fixed capital used in common by two or more exchange or toll systems.

"(b) The classification of operating revenues provides separate accounts for exchange revenue and for toll revenue. Where it is necessary to apportion the revenue between these accounts telephone companies should be prepared, when so required by the commission, to furnish the basis used in making such apportionment.

"(c) Telephone companies should keep their operating expense accounts in such manner as will permit them to show, when so required by the commission, (1) the operating expenses pertaining solely to any exchange system, (2) the operating expenses pertaining solely to any toll system, and (3) the operating expenses which are common to two or more exchange or toll systems."

We therefore conclude that where, as in the case at bar, it is charged that the exchange rates of a single municipality are unreasonable, the Corporation Commission in finding a basis for the adjustment of such rate should, as far as practicable, separate the valuation of the toll plant from the value of the exchange plant and equitably apportion between them the value of the property used in common in giving both classes of service. But by this we do not wish to be understood as approving the conclusion reached by the company, its counsel and experts, as to the comparative value of the property used in common for both classes of service. In apportioning toll line property to the Ada plant they adopt, as a basis for apportioning the value of the property used in common, the comparative use made of the common switchboard. This switchboard consists of seven sections, three of which are devoted to caring for exchange, and four for toll line business. By this process they find three-sevenths of the property of the Ada plant to be chargeable to exchange business, and four-sevenths to the toll business. This, the commission correctly finds, is a purely arbitrary basis for apportionment. It seems to us that the values of the property used in common should be, as far as practicable, apportioned between the exchange service and toll service on actual service requirements, and the cause will be remanded to the commission for re-examination on this point for the purpose of making findings and conclusions upon this basis.

Another ground for complaint is based upon the claim that the Corporation Commission refused to allow the company a sufficient reserve for depreciation. The commission held that, inasmuch as the evidence showed that the physical plant was kept up to a high degree of efficiency by replacements paid for out of current revenue, and that any deterioration covered by obsolescence would not affect the result in the case at bar, there was no depreciation, and therefore an allowance for a reserve fund to take care of depreciation was not necessary, and should not be allowed. The contention of the company on this point is that, notwithstanding every part of a properly constructed and well-equipped telephone system may be maintained in good condition from year to year out of the maintenance fund, yet the time inevitably comes with every building and unit of equipment when it can no longer be kept serviceable by repairs or current maintenance, and when it must be replaced substantially in its entirety. Therefore, they say, since the total life expectancy of the parts of the entire plant may be measured in years on something similar to a mortality table basis, unless a depreciation fund is provided for from year to year out of earnings, sufficient to replace the plant substantially in its entirety at the end of each life expectancy period, the dividends paid will before long represent the better part of the stockholders' investment. A great many authorities and opinions of experts are cited by counsel for the company which they say conclusively show the economic necessity for the principle contended for, among which are the following: Pioneer Tel. & Tel. Co. v. Westenhaver, 29 Okla. 429, 118 Pac. 354, 38 L. R. A. (N. S.) 1209; State Journal Printing Co. v. Madison Gas & Elec. Co., 4 W. R. C. 501; In re Application of Cumberland Municipal Elec. Lighting Co., 4 W. R. C. 214; Cunningham et al. v. Chippewa Falls Water & L. Co., 5 W. R. C. 302; Puget Sound Elec. R. Co. v. Railroad Commission of Washington, 65 Wash. 75, 117 Pac. 739, Ann. Cas. 1913B, 763; People ex rel. Manhattan R. Co. v. Woodbury et al., 203 N. Y. 231, 96 N. E. 420; People ex rel. Third Avenue R. Co. v. State Board of Tax Commissioners, 136 App. Div. 155, 120 N. Y. Supp. 528.

The expert opinion relied upon consists of an article by Mr. William B. Jackson, enti-

tled, "Depreciation and Reserve Funds of Electrical Properties," published in The Electrical Review of May 7, 1910, p. 934, the report of William J. Hagenah in his Investigation of the Chicago Telephone Company, 1910, and in the second volume of Telephony, page 102. After examining such of these authorities as are available to us, and others on the same subject not cited, we find ourselves unable to agree with counsel in their assumption that the doctrine of depreciation, as contended for by them, meets with the universal approval of the courts and the economists. From our investigation of the problem of depreciation we are convinced that precedent on this question is varying, and that there is also great contrariety of opinion among the heads of public service corporations themselves, some companies believing that their best interests lie in adopting the largest possible depreciation charge and in the consequent accumulation of a permanent fund in the future, whilst others contend that the application of the doctrine amounts to a virtual confiscation of their property. Without attempting to set out herein our analysis of these discordant views, it is sufficient to say that we have reached the conclusion that in plants of considerable size that have attained their gait, to which class the plant herein is conceded to belong, there is botif theoretically and actually a normal condition in which the replacements come along with comparative evenness, and where there can be no possible use for a so-called depreciation fund of any considerable amount.

In the case at bar, as we have seen, the commission made no deduction from the value of the plant on account of depreciation, but allowed returns upon its value as a going concern, kept up to a high degree of efficiency by replacements paid for out of current revenue. There is no principle of public regulation more firmly established than the right of the company to charge in its rate an amount which will enable it to make these replacements, and as investors put their money into public utilities for the sake of the returns they will be able to obtain, if the allowance for replacements is sufficient to keep up a high degree of efficiency and prevent a lowering of the ability of the plant to earn returns, we are unable to perceive the necessity for building up a fund to be used for the purpose of counteracting a purely theoretical depreciation. The theory of the commission seems to be that charges should be made in rates sufficient to counteract or prevent depreciation by replacements, and that when replacements are thus fully provided for, depreciation is counteracted.

We see no error in this; at least, none of which the appellant company has any just cause to complain.

Under the heading, "Going Value or Cost of Establishing Business," counsel for the telephone company in their brief say:

"The commission refused to allow anything to cover what is sometimes referred to as 'going value,' but more properly designated, 'cost of establishing the business,' holding that while the item had been referred to in Whorton's Exhibit C, where Mr. Whorton stated that the amount of $30,010 did not include going concern value, was the only reference in the record to the subject of going concern value as applied to the defendant's property in Ada; that if there is such an element of value in the plant in question, it would appear that the burden would rest upon the defendant corporation to show the amount thereof if the same is to be accepted as a legitimate factor in the valuation of investment upon which the defendant is entitled to earn."

If counsel mean by this that, in addition to the actual value of the plant as a producing factor, they are entitled to returns on a definite sum as the measure of going value, or that the record shows that the Corporation Commission did not consider the plant of the telephone company as a going concern in fixing the value thereof, we cannot agree with them. It is well settled, as we have seen, that what the company is entitled to demand in order that it may have just compensation is a fair return upon the reasonable value of its property used by it for the convenience of the public as a producing factor at the time it is being used. In rate-making cases the corporation whose rates are under consideration is always a going concern, and it is inconceivable to think of it in any other light. In such cases the term, "going concern value," simply means the value of the plant as a whole upon which the company is entitled to a fair return, as distinguished from its bare physical value. We think there can be no doubt that the Corporation Commission found and fixed a valuation upon the property of the company as a going concern, as distinguished from its value as a mere naked plant. The commission is not required—indeed, it would not be practicable—to set aside a definite sum as the measure of going value. As was said by Mr. Chief Justice Winslow in Appleton Water Co. v. Railroad Commission, 154 Wis. 121, 142 N. W. 476, 47 L. R. A. (N. S.) 770, Ann. Cas. 1915B, 1160:

"However, the fundamental difficulty with the attempt to set a definite sum as the measure of going value is that it is an attempt to divide a thing which is, in its nature, practically indivisible. The value of the plant

and business is an indivisible gross amount; it is not obtained by adding up a number of separate items, but by taking a comprehensive view of each and all of the elements of property, tangible and intangible, including property rights, and considering them all, not as separate things, but as inseparable parts of one harmonious entity, and exercising the judgment as to the value of that entity."

We do not understand that the case of Pioneer Tel. & Tel. Co. v. Westenhaver, supra, is an authority in favor of what seems to be counsel's contention, that the company is entitled to have a definite sum found as a going concern value. On the contrary, we think that case supports what we deem to be the true rule, that going value necessarily inheres in and constitutes an inseparable part of the entire structure as a going concern; that is, that the value of the plant, and the business as a producing factor, is an indivisible gross amount, and any attempt to fix a definite sum as the measure of going value would be an attempt to divide a thing which is in its nature practically indivisible.

The findings and conclusons of the Corporation Commission as to the reasonableness of the proportion of its returns paid by the plaintiff in error to the American Telephone & Telegraph Company seem to be supported by the evidence in the record as it now stands. Of this item counsel for plaintiff in error say in their brief:

"Since the trial of this case the commission has tried two or three other rate cases wherein the validity of this payment was questioned by the commission, and in order to show fully and leave no doubt in the minds of that body as to the reasonableness and fairness of this payment, the defendant has introduced the evidence of its engineer covering more than 120 pages of solid typewritten matter, going into the subject exhaustively, and in detail, and in addition to this has introduced in evidence the entire record covering the inquiry of the Public Service Commission of Washington, the Public Service Commission of California, and the Railroad Commission of Oregon, into the arrangement between the Pacific Telephone & Telegraph Company and the American Telephone & Telegraph Company, with reference to the 4½ per cent. of its gross receipts paid by the former to the latter. This record covers 696 pages of printed matter, tables, and statistics, and on account of the fact that the record in this case is not in condition to present the entire matter to the court fully, we respectfully recommend that it render no decision in this case as to the validity of this payment, as it would no doubt be a precedent, and the matter should not, in our judgment, be finally passed upon in this legislative manner until the court has possession of all relevant facts. The amount involved in the present case is so small that we do not believe it would change the result one way

or the other, as we are entirely satisfied that if no sum whatever is allowed as a proper expense for the property and benefits received, the rates in force at the time the order was made should not have been reduced."

If this item is material to the adjustment of the exchange rate at Ada, application may be made to introduce the additional evidence above adverted to when the cause goes back to the commission for re-examination, which, no doubt, will be sustained by the commission if it finds such additional evidence to be material to the matter now under consideration. We believe the foregoing discussion covers all the points of difference between the parties necessary to a correct understanding and determination of all questions in dispute herein when the cause comes on for further investigation before the commission.

Section 22, art. 9, Williams' Constitution, provides:

"In no case of appeal from the commission, shall any new or additional evidence be introduced in the Supreme Court. * * * The Supreme Court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising under such appeal: Provided, however, that the action of the commission appealed from shall be regarded as prima facie just, reasonable, and correct; but the court may, when it deems necessary, in the interest of justice, remand to the commission any case pending on appeal, and require the same to be further investigated by the commission, and reported upon to the court (together with a certificate of such additional evidence as may be tendered before the commission by any party in interest), before the appeal is finally decided."

In view of the misconception of the commission hereinbefore pointed out, the interest of justice requires the cause to be remanded to the Corporation Commission for further investigation, and to make findings of fact and conclusions of law based upon the theory herein outlined; and for the purpose of taking such additional evidence as may be deemed necessary by the commission for a full and fair hearing of the question in controversy. It may be that the evidence now in the record is sufficient to enable the Corporation Commission to make findings and conclusions as to the value upon the basis herein approved. In that event, the only duty to be performed by the commission will be to make findings and conclusions as to the specific points in controversy upon the approved basis outlined herein, and to return the same with the record.

It is true that counsel for the appellant in their brief and its experts at the trial, as we have seen, draw certain conclusions from the evidence as it stands as to the proper apportionment of exchange and toll property which, if accepted, would probably show the rate fixed to be unreasonable. The Supreme Court, however, in considering appeals from the Corporation Commission is entitled to have before it a written statement prepared by the commission of the reasons upon which the action appealed from is based. Section 22, art. 9, Williams' Constitution. And these reasons, of course, ought to be predicated upon a correct understanding of the legal principles involved. Notwithstanding the commission committed error in the respect hereinbefore pointed out as to the proper basis for ascertaining the value of the property of the telephone company used for the convenience of its exchange patrons at Ada, it does not follow that the rate fixed by it for that service may be found to be unreasonable when predicated upon the basis herein approved.

The record before us clearly shows that the rates adopted by the commission were based upon a full investigation which involved the exercise of judgment and discretion by the commission. In these circumstances, the action of the commission appealed from must be regarded as prima facie just, reasonable, and correct, until such time as the cause can be considered upon full hearing.

It is therefore ordered that this cause shall be remanded to the corporation commission for further investigation and report on the points herein indicated, and that the record be returned to this court, together with the certificate of such additional evidence as may be tendered before the commission, within 60 days from the date of this order.

All the Justices concur, except MILEY, J., disqualified and not participating.