**MULLENDORE GAS CO. et al. v. CITY OF STILLWATER et al.**

No. 15625—Opinion Filed April 6, 1926.

Rehearing Denied Nov. 30, 1926.

1. **Corporation Commission—Public Utility Rates—Basis of Reproduction Cost of Property—Fair Value of Material at Date of Hearing.**

In estimating the cost of material of a public utility on the theory of what it would cost to reproduce the property. the fair and reasonable market value of such material at the date of the hearing is a proper basis for computation.

2. **Same—Value Based on Reproduction Cost Less Depreciation.**

As a general rule, to determine the value of a small public utility property, what it would cost to reproduce the property less accrued depreciation is the safest and most certain method of obtaining present fair value upon which such utility is entitled to a return. Okmulgee Gas Co. v. Corporation Commission, 95 Okla. 213, 220 Pac. 28.

3. **Same—Burden to Prove Value of Utility Applying for Rates.**

In a proceeding instituted before the Corporation Commission by a public utility for the purpose. of having established a rate to be charged by it for the service rendered, it is incumbent upon such public utility to establish by competent evidence the fair and reasonable value of its property used and useful in the public service at the time of the inquiry.

4. **Same—Going Concern Value Considered.**

A going value of a utility should be con-

sidered in a rate valuation; but a specific sum should not be allowed for such value, especially when no losses have been suffered in establishing the business.

5. **Gas—Rates—Reasonableness — Continuing Jurisdiction of Corporation Commission.**

Ordinarily time alone can satisfactorily demonstate in a case like this whether a rate fixed by order of the Corporation Commission will prove so unremunerative as to be confiscatory in the sense in which that term is used in rate-making cases. And where the Commission expressly retains jurisdiction of the cause and reserves the right upon subsequent application or upon its own motion to further investigate the rates authorized in the order. this sufficiently protects the companies as against their claim. that the new rates will prove confiscatory.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Appeal from Corporation Commission.

From an order of the Corporation Commision fixing gas rates of the Mullendore Gas Company, and denying its application for an increase in gas rates, said company appeals. Order of the Corporation Commission affirmed.

A. Carey Hough and Geo. A. Henshaw,. for plaintiffs in error.

E. S. Ratliff, for defendants in error.

Opinion by PINKHAM, C. On the 20th day of June, 1924, the Corporation Commission made and entered an order to the effect that the rate for gas service rendered by the Mullendore Gas Company, plaintiff in error, to all consumers in the city of Stillwater and in the town of Ingalls and vicinity shall be as follows:

"First 50 M cu. ft. per consumer per month 36c per M cu. ft.

"Next 150 M cu. ft. per consumer per month 30c per M cu. ft.

"All in excess of 200 M cu ft. per consumer per month 22½c per M cu. ft."

From this order of the Commission the Mullendore Gas Company has duly appealed.

All of the propositions presented and relied upon for a reversal of the cause are discussed in the brief of plaintiffs in error under one general proposition, which is that the findings of the Commission as to the value of the plaintiffs in error's property, used and useful, and the earnings and expense as found by the Commission, are not supported by the testimony; and that the order of the Commission is confiscatory..

However, as we understand the argument of counsel for plaintiffs in error, there is no complaint about the last two items of the rate that the Commission fixed. The complaint is that the 36c rate for the first 50,000 cubic feet is not supported by the evidence, and that the evidence shows that the gas company is entitled to charge. at the very least. 45c to domestic consumers of the city of Stillwater.

The record discloses that during the year 1916 gas was developed within about 15 miles of the city of Stillwater; that the Mullendore Gas Company was organized and constructed its distributing plant, after securing a franchise from the city of Stillwater, and that at the same time the Payne County Pipe Line Company was organized for the purpose of constructing a pipe line to purchase and deliver gas to the distributing plant. These companies belong substantially to the same stockholders.

It appears that the gas field from which the plaintiffs in error have been furnishing gas since 1916 has been greatly reduced, if not exhausted, except a number of wells purchased by the Oklahoma Natural Gas Company, and that during the two or three winters prior to the hearing of this cause before the Commission, the people of Stillwater did not have an adequate supply of gas in cold weather.

It further appears that during the summer of 1923, a discussion arose between the citizens of Stillwater and the Mullendore Gas Company with reference to a supply of gas for the coming winter—1923-24. The matter was taken up with the Oklahoma Natural Gas Company to see if gas could be secured from it at the rate of 35c per thousand cubic feet near that company's wells. The Oklahoma Natural Gas Company refused to take on any new customers and declined to sell the plaintiff in error the Mullendore Gas Company gas at any price. In this situation the Mullendore Gas Company made arrangements to purchase gas from the Cushing Gas Company at a rate of 14c per thousand cubic feet on a 2-pound basis.

It further appears that in order to reach the pipe lines of the Cushing Gas Company it was necessary for the Payne County Pipe Line Company to build seven miles of 6-inch line and cross the Cimarron river. At that time the rate charged by the Mullendore Gas Company was 40c per thousand cubic feet to the domestic consumers of Stillwater.

It appears that prior to the 17th day of May, 1923. the Commission had caused its auditors and accountants to investigate the books of the two companies for the purpose of ascertaining the operating expenses of the said companies, and on May 17, 1923, the Commission suggested, in a letter to the Mullendore Gas Company, the placing in effect of substantially the rates heretofore mentioned. The letter of the Commission was to the effect that unless the company placed the rates suggested in effect a hearing would be held on June 4, 1923, for the purpose of conducting an investigation as to the proper rate and charge for the service rendered in the city of Stillwater.

The hearing was commenced on the 23rd day of October, 1923, and heard upon that date, and upon November 12, 1923, and February 25, 1924. At the commencement of the hearing on October 23, 1923, the Mullendore Gas Company presented a cross-petition, in which it was alleged that it was then engaged in constructing a 6-inch pipe line at an expense of approximately $50,000, and which was necessary to guarantee the continued supply of gas to the citizens of Stillwater, and that by reason of the additional expenditures required and the increased amount paid for gas, and the increased operating expenses, it was necessary that the rates be increased from 40c per thousand cubic feet to 50c per thousand cubic feet, in order that the Mullendore Gas Company may receive an adequate supply of gas from the distributing plant, and also an adequate rate for the pipe line company for its operating expenses and investment in its pipe line. At the conclusion of the hearing the Commission promulgated its order as heretofore stated, from the rendition of which this appeal is taken.

It further appears that at the hearing before the Commission on February 23, 1924, the plaintiffs in error's seven-mile extension of its pipe line was not completed until the latter part of December, 1923, or the early part of January, 1924.

In the Commission's order complained of it is said, with reference to this pipe line extension:

"Excluding these two items there still remains a proper charge to this extension of $45,033.11. The Commission is of the opinion, and so finds, that this value of $45,033.11 should be considered and become a part of the fair value of the Payne County Pipeline Company's property."

Of the two items referred to as excluded, one was in the sum of $1,488.43, and the second item was in the sum of $1,000. The first of these items was excluded by the Commission because Mr. Mullendore, president of the gas company, testified on February 25, 1924, that it was not a proper charge

to this extension. The second of these items was excluded because no check was found in those submitted to the Commission which could be considered as proof that payment of the item was actually made.

It is conceded by counsel for the parties to this controversy, that the important things to be considered in a case of this kind are: First, the valuation of the property used and useful in rendering service to the public; and, second, the net rate to cover interest upon the investment, depreciation, and amortization.

Counsel for plaintiffs in error cite numerous decisions of this and other jurisdictions, including the Supreme Court of the United States, to the effect that the reproduction new theory is the proper basis for determining present values. Among the cases referred to is that of Okmulgee Gas Co. v. Corporation Commission, 95 Okla. 213, 220 Pac. 28, in which case it is said:

"As a general rule, to determine the value of a small public utility property, what it would cost to reproduce the property less the accrued depreciation is the safest and most certain method of obtaining present fair value upon which such utility is entitled to a return."

An examination of the record shows very clearly that the Commission, as well as the expert witnesses, both of the gas company and the Commission, proceeded upon the theory that the reproduction value as of the time of the hearing was the most important element to be considered in arriving at a correct conclusion as to the present fair value for rate-making purposes.

The Commission concluded in the order appealed from:

"After considering all the evidence in this case bearing upon the valuation of the property involved, the investment therein, its original cost, its cost to reproduce, and present value, including all overheads; preliminary costs, costs of engineering, supervision, interest, insurance, organization, and legal expenses during construction; working capital, materials, and supplies; and all other elements of value, tangible and intangible, and considering the plant is now a going concern in successful operation, the Commission finds the fair value of the Payne County Pipeline Company's property, for the purpose of determining just. and reasonable rates, $116,281.05, and the fair value of the Mullendore Gas Company's property, for the purpose of determining just and reasonable rates, $82,794.65."

Or, for the two companies combined, the sum of $199,075.70, which the Commission took as the basis for the conclusion arrived at in the order of the Commission. The Commission found from the evidence the total revenue of the Payne County Pipeline Company for the year ending December 21, 1924, to be $64,869.42; operating expenses and taxes, $49,612.76; depreciation allowance, $5,814.05; making a total of $55,426.81, leaving available for return upon investment (after caring for depreciation), $9,442.61; and that the foregoing amount of $9,442.61, available for return, is equivalent to 8.12 per cent, annually upon the fair rate-making value of the property, to wit, $116,281.05, hereinbefore determined.

With respect to the Mullendore Gas Company, the Commission found from the evidence that the total revenue for the year ending December 31, 1924, was $92,028.62; operating expenses and taxes, $81,941.20; depreciation allowance, $4,149.73; making a total of $86,081.03, leaving available for return upon investment (after caring for depreciation), $6,947.59; and that the foregoing amount of $6,947.59, available for return, is equivalent to 8.34 per cent. annually upon the fair rate-making value of the property, to wit, $82,994.65, hereinbefore determined.

It is contended by counsel for plaintiffs in error that the value which should be allowed, according to the evidence of its accountant, Mr. Musson, for the Payne County Pipeline Company, should be $112,855.52, and the property used in distributing gas in Stillwater should be valued at $101,236.98, or a total of $214,091.00. The record discloses that this difference in the value arrived at by the expert witnesses for plaintiffs in error and for defendant in error, upon the reproduction new basis, consists of different prices of pipe applied to the quantities that were being considered, and in the difference in the cost of labor in constructing the two systems involved in the controversy. The difference in the price of the pipe, as testified to by witnesses for the plaintiffs in error and for the defendants in error, is shown to be $6,171.16. The plaintiffs in error's accountant testified that he obtained his prices for pipe in making the inventory and appraisement of the Mullendore gas properties from the Continental Supply Company; that they were confidential net prices issued April 16, 1923. Based upon this confidential list price the total cost of the pipe in question, according to the testimony of the engineer of the gas company, would amount to $44,195.40. According to the engineer of the Commission the cost of such pipe would amount to $38,024.24, making, as before stated, a difference of $6,171.16.

The record further shows quotations made

in letters direct from the pipe manufacturers of prices at which pipe could be had at the time purchased in quantities used in the reconstruction of such plants as the one under consideration. The prices quoted in these letters from pipe manufacturers agree with the estimate made by the engineer of the Commission.

In his testimony the president of the Mullendore Gas Company testified as to the actual price paid for the pipe which went into the construction on the seven-mile extension heretofore referred to, and it is contended that this price should be taken as a basis for calculation rather than the market price at which the material could be purchased for such construction. This contention is not sustained. The Commission endeavored to find the cost of reconstruction of this plant, and at what price the pipe could be purchased at or about the time of the hearing in order to arrive at the present value of the property.

The other important difference found between the valuation of Mr. Stockwell and Mr. Musson is an item of labor on gas mains, the difference amounting to $8,757.38. This amount, added to the difference in the price of material, as testified to by the two engineers, accounts for a total difference of $14,928.54, which is the principal part of the difference in the two appraisals, the remaining difference being found in the valuation found for similar items of property.

The record discloses that the engineer of the gas company estimated that it will require one man 5.6 hours to excavate and back-fill one cubic yard of dirt, while the engineer of the Commission makes an allowance for the same amount of work of approximately two hours. We are forced to conclude that the estimate made by the expert witness for the plaintiffs in error appears upon its face to be unreasonable.

The record discloses that the Commission, in the case of the Mullendore Gas Company's distributing properties in the city of Stillwater, added some $17,000 for working capital, and what is known as overheads and intangibles. In other words, to the engineer's value of $65,806.06 there was added an amount for these items of property, bringing the value found by the Commission up to the amount of $82,794.65 and to the value testified to by Mr. Stockwell, the Commission's engineer, as being the physical value of the items entering into the property of the Payne County Pipe Line Company, to wit, $103,478.11, there was added an amount by the Commission for working capital and overheads sufficient to bring that amount to

$116,281.05, so that it appears that an allowance was made by the Commission on these two properties of approximately the sum of $32,000, to cover working capital and what is known as overheads and intangibles.

Counsel for plaintiffs in error contend that in all of these various items, to which the Commission states in its order it gave consideration, it only gives the basis for one, and that. is working capital.

The record shows that although the companies were organized in 1916, the reports of both the accountants of the Commission and of the companies on original cost value, show that not a dollar of intangibles or overhead expenses appears on the books of the Payne County Pipeline Company, and that for the same items of expense the accountant for the Mullendore Gas Company shows $246.75, and the accountant for the Commission shows an expense of $651.75 on the books of the Mullendore Gas Company.

We are unable to find in the record before us any evidence of expenditures charged to overheads other than the two items above mentioned, although the Commission made substantial allowance for such indebtedness, adding some $32,000 to the physical value of the properties.

In the absence of book entries of the companies of such expenditures for legal expenses necessary, injuries during construction, interest during construction, and other so-called overheads, estimates by the companies' expert witnesses as to the sums that would be necessary to expend in the reproduction new of the properties would be wholly theoretical, and merely the expert witnesses' estimate that such expenses may be incurred if the companies' properties were duplicated new under the present conditions on the cost basis assumed by such witnesses. There is no proof that such overhead expenses or any part of them were actually paid in the building up of the existing property.

The question of allowance of overheads has been considered by various courts and commissions. including this court. In Oklahoma Natural Gas Co. v. Corporation Commission et al., 90 Okla. 84, 216 Pac. 917, the court held that the burden of proof with respect to every element of value entering into the rate base is upon the public utility.

"The inclusion or exclusion of overheads, and the amount thereof in the valuation of an existing property, should depend to some extent at least upon the particular facts of the situation and not wholly upon the imagination of an engineer as to what may

happen if it were duplicated new under present conditions." Indiana Public Service Commission: Re Lebanon Telephone Co., P. U. R. 1925B, 114.

Counsel for plaintiffs in error, in their brief, discuss the matter of going concern value, and cite numerous authorities in support of the proposition that a separate allowance for that element of value should have been found by the Commission.

The Commission found in its order, and there is no dispute in the evidence as to the fact, that the gas plant involved in this case is in successful operation, and therefore the Commission was not required to set aside a definite sum as the measure of going value. Pioneer Tel. & Tel. Co. v. State, 64 Okla. 304, 308, 167 Pac. 995; Whitten on Valuation of Public Service Corporations, page 497.

Counsel for plaintiffs in error direct attention in their brief to the case of Pioneer Tel. & Tel. Co. v. Westenhaver, 29 Okla. 429, 118 Pac. 354, in support of the contention, as we understand it, that a separate allowance for going concern value should have been made by the Commission. In Pioneer Tel. & Tel. Co. v. State, supra, the court said:

"We do not understand that the case of Pioneer Tel. & Tel. Co. v. Westenhaver, supra, is an authority in favor of what seems to be counsel's contention, that the company is entitled to have a definite sum found as a going concern value. On the contrary, we think that case supports what we deem to be the true rule, that going value necessarily inheres in and constitutes an inseparable part of the entire structure as a going concern; that is, that the value of the plant, and the business as a producing factor, is an indivisible gross amount, and any attempt to fix a definite sum as the measure of going value would be an attempt to divide a thing which is in its nature practically indivisible."

In the case of Des Moines Gas Co. v. Des Moines, 238 U. S. 153, cited by counsel for plaintiffs in error, the court held:

"That there is an element of value in an assembled and established plant, doing business and earning money, over one not thus advanced, is self-evident. This element of value is a property right, and should be considered in determining the value of the property, upon which the owner has a right to make a fair return when the same is privately owned, although dedicated to public use. Each case must be controlled by its own circumstances, and the actual question here is: In view of the facts found, and the method of valuation used by him, did the master sufficiently include this element in determining the value of the property of this company for rate-making purposes?"

Des Moines Water Co. v. Des Moines, 192 Fed. 193; Gloucester Water-Supply Co. v. City of Gloucester (Mass.) 60 N. E. 977; Valparaiso City Water Co. v. City of Valparaiso (Ind. App.) 69 N. E. 1018; and Venner Co. v. Urbana Waterworks, 174 Fed. 348, are cited by counsel for plaintiffs in error in their brief, for the purpose of sustaining the proposition that the Commission should have found a separate item of going concern value. We are unable to find from an examination of these cases any support for the contention made.

In the case of Knoxville v. Knoxville Water Co., 212 U. S. 1, cited in the brief of counsel for plaintiffs in error, it appears that the court did not pass upon the question of going concern.

The Commission, by its order, provided an allowance for the gas company for depreciation of 5 per cent. upon the value of the property found as a rate basis. The testimony of the witness Musson, the company's engineer, is to the effect that the property of the gas company in Stillwater and vicinity has a life of not less than 20 years, and that it was constructed in 1917, seven or eight years prior to the date of the hearing in this case. Mr. Nash, the other expert witness of the gas company, estimated that 10 per cent. for depreciation should be earned in the form of the rate to be charged the gas patrons. Mr. Musson, the gas company's engineer, in his calculations in arriving at what he considered to be the value of the property, allowed as a deduction from the reproduction new value about 3 per cent. per annum. Mr. Stockwell, the expert witness for the Commission, allowed approximately 4 per cent. in his calculation of the Mullendore Gas Company property, but has taken the same basis in so far as the Payne County Pipeline Company is concerned, as used by Mr. Musson, for the reason that he did not make an inspection of that property but took for the purpose of this case the condition per cent. testified to by Mr. Musson, the company's engineer.

The record clearly establishes the fact that only $75,000 of actual money has ever been put into the property in Stillwater and vicinity, and that any additional investment reflected by the company's inventory, or by its books, has been built up from earnings of the company and from the depreciation reserve and has been more than sufficient to authorize the original investment. We think the evidence supports the Commission's finding that 5 per cent. as allowed by the

Commission is ample for all purposes, whether it be depreciation or amortization.

Counsel for plaintiffs in error earnestly contend that the finding of the Commission, that the salaries paid general officers by these two companies were excessive, and that a part of such salaries should be disallowed in the determination of proper and just operating expenses for the future, is not supported by the testimony. We do not think the action of the Commission in eliminating a part of the salaries of the general officers of the companies, even though erroneous, is of sufficient magnitude to affect the result finally reached by the order complained of.

Counsel for plaintiffs in error say in their brief:

"Now the Commission insists, and, notwithstanding this company was charging a rate of 40 cents based upon old conditions, that as $47,000 was expended in extension of the lines and 4 cents more per thousand cubic feet was required to be paid for gas, buying the same from another pipe line, that the rate should be 36 cents."

In this connection it must be borne in mind that under the 40 cent rate obtained by the gas company, a very unsatisfactory condition existed in the city of Stillwater by reason of the fact, clearly, we think, admitted by the president of the gas company in his testimony, that for several winters preceding the hearing, his company did not and probably could not, in its then condition, furnish an adequate supply of gas to its patrons, and that because of that condition the gas company built seven miles of new pipe line through the Payne County Pipeline Company, in order to remedy that situation, but during all the time the gas company had been furnishing an inadequate supply of gas, it had collected from the patrons 40 cents and 45 cents per thousand cubic feet per domestic consumer per month. It must be borne in mind, also, that while the pipe for the new line had been purchased and the line nearly completed, at the time of the hearing it was not in full operation when the order complained of was entered.

In its order the Commission expressly retains jurisdiction of the cause, and reserves the right upon application or upon its own motion to further investigate the rates authorized in the order, and to issue such further orders as may be justified by the facts determined in subsequent hearings as to the rates for gas service furnished by the Payne County Pipeline Company and the Mullendore Gas Company.

It thus appears that if the rate of 36c per thousand cubic feet for the first 50,000 cubic feet per consumer per month, as fixed by the order of the Commission, is shown by actual application to be confiscatory, as contended by counsel for the gas company, nothing in the order appealed from will prevent it from making an application to the Commission to increase the rate. While it is true that any inadequate rate confiscates the property of the utility, it is equally true that by the same rule of law an excessive rate confiscates the property of the patron. But on the record before us we are unable to say that the rate prescribed by the order of the Commission will have the effect of denying to the gas company a reasonable return upon its investment.

We conclude that the order of the Corporation Commission appealed from is supported by the evidence, and that the same is reasonable and affords a fair basis for the earning of a reasonable return upon the investment in the property actually used in the public service in the city of Stillwater.

We think the order of the Corporation Commission should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 581 §43. (2) 28 C. J. p. 582 §43. (3) 28 C. J. p. 581 §43. (4) 28 C. J. 583 §45 (5) 28 C. J. p. 577 §39.