## WESTERN TELEPHONE CORPORATION v. CORPORATION COMMISSION.

No. 25339.   March 3, 1936.

Rehearing Denied April 21, 1936.

E. S. Ratliff, for plaintiff in error.

Holmes Baldridge, for defendant in error.

OSBORN, V. C. J. This is an appeal by the Western Telephone Corporation, hereinafter referred to as the company, from an order of the Corporation Commission reduc-

ing telephone rates for the city of Kingfisher and vicinity.

On June 19, 1931, the city of Kingfisher filed with the commission a petition asking that the company be required to install a modern telephone system at its Kingfisher exchange. At that time the telephone system was of the type commonly known as a magneto telephone system. The system which the city sought to have installed was a common battery or central energy telephone system. A hearing was had on the application, and the company agreed to install the modern common battery system, but it developed that, on account of general economic conditions the company was not able to procure the necessary funds to install the new system. Thereafter, and on September 9, 1932, the city, having failed to secure the desired improvement, filed a petition with the commission in which it sought an adjustment of rates. Several hearings were had on this petition, and on December 4, 1933, the commission made its finding of fact and entered an order reducing the rates in the following particulars:

"289 one-party residence telephones reduced 25c per month, or $3.00 per year _____$ 867.00

"103 two-party residence telephones reduced 25c per month, or $3.00 per year _____ 309.00

"400 multi-rural stations reduced 8.33c per month, or $1.00 per year 400.00

"Total distributed excess _____$1,576.00"

In fixing a rate for the services rendered to the citizens of Kingfisher and vicinity, the commission found and fixed the rate base or fair present value of the telephone properties owned and operated at the Kingfisher exchange; ascertained the revenue and operating expense for a twelve-month period ending September 30, 1932, as a base for estimating future revenue and expense; allowed five per cent. annually on depreciable property for depreciation and amortization, and determined that the company was entitled to earn a return of 7 per cent. annually on the rate base. It was found that on the basis of the income and operating expense for the twelve-month period used, the company was earning at the rate of 15.07 per cent. on the rate base, which was excessive; that the reduction of rates above set forth on the 289 one-party stations, 103 two-party stations, and 400 multi-rural stations served by the Kingfisher exchange would accomplish such a reduction in rates

as would allow a return of approximately seven per cent. per annum on the rate base.

It is urged first that the commission erred in the determination of the rate base or present value of the properties. It appears that an appraisal of said properties was made at the direction of the commission by its telephone engineer, Mr. B. Richardson, who testified that according to his appraisal the reproduction cost new of the physical properties depreciated was $40,556. One Endsley Jones testified for the company that he examined the properties and estimated that the reproduction cost new depreciated or present fair value of the physical properties was the sum of $58,200.78. The difference in the estimate of the two experts is accounted for by the fact that the witness Richardson found the physical properties to be in 74 per cent. condition, while the company's witness Jones found the properties to be in 80 per cent. condition, and the witness Richardson appraised the real estate, land, and buildings at the sum of $6,000, whereas the company's witness Jones allowed $18,000 for lands and buildings. There is disclosed considerable difference of opinion in respect to the value of the building. The building was constructed about 1893 and was used for many years by one of the local banks. It is a two-story brick structure. In 1925 the bank sold the building to one Charles B. Ford, who at that time owned the Kingfisher telephone exchange, for a cash consideration of approximately $8,500. The record shows that, in addition to the testimony of the expert witnesses above referred to, various other witnesses were called and testified as to the value of the building, and the commission eventually placed a valuation thereon of $8,500. It developed that during the year 1932 some new construction was added to the building and an allowance of $3,000 was made for this item. We set out the various items used and considered by the commission in fixing the rate base as follows:

"Physical properties, including the overheads of engineering and superintendence, omissions and contingencies, interest during construction, materials and supplies, etc. (Ex. No. 6) _____$40,556.00

"Cash working capital _____ 300.00

"Ledgers, forms and accounting supplies _____ 100.00

"Cost of securing franchise permits, subscribers' contracts,

etc. ------------------------ 1,000.00

"Addition to include full value
of building ------------------ 2,500.00
"New construction ------------ 3,000.00

"Rate base ------------------$47,456.00
or --------------------------- 47,500.00"

It is observed that the commission did not adopt the testimony of either of the principal expert witnesses in the case, but increased to some degree the estimates of value placed upon the properties by its own engineer. We have carefully considered the argument of the company as to its conception of the value of the properties, and in view of all the evidence presented we are of the opinion that the finding of the commission is amply sustained by the evidence.

In the appraisal submitted by the company there was included an item of "cost of attaching business $7,236.99." This item is sometimes referred to as "going-concern value." In place of allowing this item as a part of the value of the physical properties to be considered in fixing the rate base, the commission adopted an item contained in the report of the witness Richardson as "cost of securing franchise permits, subscribers' contracts, etc., $1,000." It is urged that the commission erred in refusing to consider "going-concern value" in fixing the valuation of the properties. In the case of Carey v. Corporation Commission, 168 Okla. 487, 33 P. (2d) 788, it is said:

"The company contends that it is entitled to an allowance of 10 per cent. of the reproduction cost new less depreciation in value of the plant for going-concern value. It cites authorities by which it hopes to establish that going-concern value is a necessary element in this formula. This is not true whatever the cases formerly may have held. It is generally recognized now that the reproduction cost new less depreciation, or book value, less depreciation, or historical cost, less depreciation, plus interest during construction, plus organization and legal expense, plus an allowance for materials, supplies, working capital and taxes, make a hypothetical company having an existence, and being more than a mere bare bones organization, and that in the estimates and allowance so made, what is generally termed as 'going-concern value' is adequately covered. Pioneer Telephone & Teleg. Co. v. State, 64 Okla. 304, 167 P. 995; Mullendore Gas Co. v. Stillwater, 120 Okla. 140, 250 P. 895; and Los Angeles G. & E. Corp. v. Railroad Commission, 289 U. S. 287, 77 L. Ed. 1180."

It is shown that in estimating the expense of operation and other necessary allowances, the commission took into consideration the following items:

"Entitled to Earn:
"For return (7% on $47,-
500.00) -------------- $ 3,325.00
"For depreciation (5%
on $44,853.00) ------- 2,242.65
"Maintenance expense -- 2,043.15
"Traffic expense -------- 5,680.30
"Commercial expense -- 2,784.75
"General and Miscellaneous expense ---------- 1,916.70
"Uncollectibles ---------- 107.31
"Dues, donations & Contributions ------------ 106.90 (red)
"Additional labor costs N. I. R. A. ---------- 600.00
"Taxes ---------------- 1,966.95

"Total Annual Requirement ------- $20,559.91
"Gross revenue (12 Mo. period ended Sept. 30, 1932 ------------------ 22,153.27

"Excess ------------- 1,593.36"

In view of the nature of the business involved herein and the probable expense of attaching business, and in view of the fact that the company enjoys a virtual monopoly, we are of the opinion that the various elements which have been considered by courts as a part of the "going-concern value" have been duly considered and allowed by the commission and that in addition to the allowances so made the company is not entitled to a further allowance of 10 per cent. of the total gross value of the properties based upon its own conception of said gross value.

Complaint is made of the methods used by the commission in estimating the net revenue of the company. In this connection it appears that the commission used as a basis of its calculations a certain exhibit showing the total revenue received for a twelve-month period ending September 30, 1932. Certain deductions were allowed and the sum of $7,161 was fixed as estimated revenue. The company insists that the commission should have taken into consideration the further facts that subsequent to the date of September 30, 1932, the company lost a total of 45 telephone stations in the city of Kingfisher, earning an annual revenue per station of $32.03, and sustained an additional loss of $1,400 per annum on toll commissions, and that these items should have been deducted from the estimate of income in determining the annual revenue of the company. In this connection it has

been held that "the legislative discretion implied in the rate-making power necessarily extends to the entire legislative process, embracing the method used in reaching the legislative determination as well as that determination itself." Los Angeles Gas & Electric Co. v. R. R. Commission, 289 U. S. 287, 304, 77 L. Ed. 1180. Although these items were not allowed as deductions by the commission, they were duly considered. We quote from the findings of the commission:

"Exhibit No. A-3 introduced by the company on November 16, 1933, also showed a loss of ten stations since the previous hearing, with proportionate loss in revenue. However, Exhibit No. A-3 showed a greater increase in toll revenue. It also appeared that the company station loss had been definitely checked.

"It would therefore seem that a reasonable net earning in this case would be that shown by the books of the company for the 12-month period ending September 30, 1932, namely, the sum of $7,761, less the sum of $600, the additional expenses incurred by virtue of compliance with the NRA code, or the sum of $7,161. We think this is the minimum amount which the company may reasonably expect to earn under present rates and under present conditions. The 12-month period ending September 30, 1932, which, as adjusted as set out above, is used as a basis for computing operating revenues and expenses, represents the lowest net revenue in the history of the company when revenues are compared to investment. All indications at the present time point to an increase in net earnings in the future because of increased stations and increased toll commissions. In basing earnings for the future upon earnings secured by the company during the lowest 12-month period in its history the commission affords the company the benefit of all doubt."

The finding to the effect that the year ending September 30, 1932, represented the lowest net revenue in the history of the company when compared to investment, is not challenged. It has been held that "in determining whether a rate is confiscatory the court is not confined to evidence as to the income of the corporation affected for the fiscal year during, or preceding that in which the rate was fixed." City of Knoxville v. Knoxville Water Company, 212 U. S. 1, 53 L. Ed. 371. It appears that the factors considered by the commission in forecasting possible future revenue produced a result which is fair and just. It would be manifestly unfair and unjust to take into consideration added losses without giving consideration to possible gains from other sources which would have the effect of offsetting such losses. By virtue of the economic conditions generally prevailing, which we may judicially notice (Atchison, Topeka & Santa Fe Railway Co. v. United States, 284 U. S. 248, 76 L. Ed. 273), we are impressed that the estimate of revenue made by the commission is just and reasonable, and the position of the company is not supported by sound logic and reasoning.

It is urged that the commission erred in that part of the order which ordered a reduction from $5 per year to $4 per year on the multirural stations for the reason that no complaint was made in respect to such charges and no evidence was introduced or heard with respect to the reasonableness of such charges.

By section 18, article 9, of the Constitution, and section 3618, O. S. 1931, the Corporation Commission is given power and authority and is charged with the duty of supervising, regulating, and controlling transmission companies, and is specifically authorized to prescribe and fix rates and charges. It has been held that the power of the commission to prescribe rates is no limited to complaints filed, but is inherent in the authority delegated to the commission. Muskogee G. & E. Co. v. State, 81 Okla. 176, 186 P. 730; City of Bartlesville v. Corporation Commission, 82 Okla. 160, 199 P. 396; O. G. & E. Co. v. Corporation Commission, 83 Okla. 281, 201 P. 505.

After the evidence was introduced in this case the commission found that the earnings were excessive. The commission endeavored to fix the rates so as equitably to distribute the excess. The reduction was therefore ordered on residence telephones and the multirural stations and no reduction was ordered on business telephones or extensions. We are impressed that the order of the commission is just and equitable in so far as the subscribers are concerned; that the jurisdiction of the commission was sufficiently invoked and that the order so entered was within the constitutional and statutory authority of the commission.

We have reviewed the argument and authorities relating to the annual allowances of 5 per cent. on depreciable property new for depreciation and amortization, and the allowance of 7 per cent. annually on the rate base for net rate of return, and are of the opinion that said allowances are reasonable and adequate and sufficiently provide for a fair, just, reasonable, and adequate return upon the investment involved herein.

The order of the commission is sustained.

McNEILL, C. J., and BUSBY, PHELPS, and CORN, JJ., concur.