**PUBLIC SERVICE COMMISSION of Kentucky, the Cities of Covington, Newport and Ludlow, Appellants,**

v.

**CITIZENS TELEPHONE COMPANY, Appellee.**

Court of Appeals of Kentucky.

Nov. 23, 1966.

As Modified on Denial of Rehearing March 24, 1967.

As Amended March 30, 1967.

Robert Matthews, Atty. Gen., J. Gardner Ashcraft, Asst. Atty. Gen., Frankfort, Donald C. Wintersheimer, City Sol., Covington, Lawrence Riedinger, Special Counsel, Newport, Joseph A. Boone, City Atty., Ludlow, William J. Wise, Robert B. Halloran, Newport, Charles Graham, Dayton, George Muehlenkamp, Newport, for appellants.

John J. O'Hara, O'Hara & Ruberg, Covington, Charles G. Puchta, Earl R. Huff-

man, Frost & Jacobs, Cincinnati, Ohio, for appellee.

CULLEN, Commissioner.

Citizens Telephone Company (hereinafter "Citizens") applied to the Kentucky Public Service Commission (hereinafter "PSC") for approval of a proposed increase of rates. PSC approved only part of the increase. Citizens appealed to the Franklin Circuit Court which found that the rate base fixed by the PSC was "unreasonably low" and that the rate of return allowed by PSC was so "unreasonably low" as to constitute a confiscation of property. The court entered judgment setting aside the PSC order and remanding the case for further proceedings in conformity with the court's opinion. PSC and the cities of Covington, Newport and Ludlow, which had protested the proposed rate increases, have appealed from the judgment.

Citizens serves the large urban area of northern Kentucky which lies directly across the Ohio River from Cincinnati, this area being referred to in these proceedings as the "Metropolitan Area". Citizens also has some outlying exchanges serving suburban and rural territory around the periphery of the Metropolitan Area. For convenience we shall refer to this as the "Suburban Area". Historically, the rates in the Suburban Area have been lower than those in the Metropolitan Area.

Citizens is a wholly-owned subsidiary of Cincinnati and Suburban Bell Telephone Company (hereinafter "Cincinnati Bell") which serves Cincinnati and its suburban areas in Ohio. Citizens owns no operating properties; everything it uses is leased from Cincinnati Bell. The two companies for years have provided the equivalent of a single-system service in the "Greater Cincinnati Area" consisting of Cincinnati and the Northern Kentucky Metropolitan Area. The rates have been the same on both sides of the river in this area, and patrons have been able to call anywhere in the Greater Cincinnati Area without toll. This has not been true, however, of the Kentucky Suburban Area.

In the instant proceedings Citizens sought an increase in its Suburban Area rates, its Kentucky intra-state toll rates, and its Metropolitan Area rates. PSC granted the first two but denied the third. PSC found that on an original cost basis Citizens had a rate base of $18,419,497, and on a capital structure basis had a rate base of $17,722,902. The increase in rates allowed by PSC would produce a rate of return of 5.49% on the original cost rate base, or 5.71% on the capital structure rate base.

As stated at the outset of this opinion, the circuit court found that the rate base fixed by PSC was "unreasonably low". We shall examine first that finding.

PSC took the position that because of the interlocking of corporate entities, properties and services of Cincinnati Bell and Citizens it was impossible to physically separate and value the property used and useful in rendering Kentucky intrastate service; that some property located in Ohio was used in whole or in part in rendering the Kentucky service, and, similarly, some property located in Kentucky was used in part in rendering Ohio service; and that use of a formula or manual was necessary in order to separate the property allocable to Kentucky service.

PSC used a formula predicated on the revenues derived respectively from Kentucky and Ohio. This formula was applied to original cost values of the total properties in both states. In several previous rate cases, both in Ohio and Kentucky, Cincinnati Bell and Citizens had advocated its use. The formula produced a Kentucky rate base of $18,419,497.

Citizens argues that all of the property physically located in Kentucky can and should be allocated to Kentucky and that use of a formula is necessary only to determine what portion of the property in Ohio is allocable to Kentucky. Citizens ar-

gues that an "actual use" method of apportionment, on which the books of Cincinnati Bell and Citizens purportedly were set up, should be used. This method would produce a Kentucky rate base of $20,511,690. In its brief on this appeal Citizens has repeated several times the statement that PSC has "excluded" from the rate base "more than $2,000,000 of property that is unquestionably used in providing service to its customers." The circuit judge in his opinion made substantially the same statement. This statement rests solely on the company's assertion that all of the property located in Kentucky is used for service to Kentucky consumers exclusively. This proposition is by no means "unquestionable." The Supreme Court of the United States, in Smith v. Illinois Bell Telephone Company, 282 U.S. 133, 51 S.Ct. 65, 75 L. Ed. 255, pointed out the fallacy of such a proposition and recognized as an "indisputable fact" that locally situated telephone facilities are not confined in actual use to solely local service. The Court said that to load the local consumers with the full value of the local facilities would require them to "bear an undue burden." Plainly, the patrons in the Ohio part of the Metropolitan Area receive *service* from the facilities in Kentucky, and it is not just that this service should be at the sole expense of the Kentucky patrons.

■ No formula is capable of making an exact allocation of property used and useful in providing Kentucky service; at the most a reasonable approximation can be achieved. " * * * extreme nicety is not required, only reasonable measures being essential * * *." Smith v. Illinois Bell Telephone Company, 282 U.S. @ 150, 51 S.Ct. at 69. Nothing has been shown to warrant a conclusion that the rate base produced by the formula used by PSC is unreasonably low, as found by the circuit court.

It is our opinion that the rate base fixed by the PSC is proper and reasonable.

■ As hereinbefore stated, the circuit court found that the rate of return allowed by PSC was unreasonably low. With this we are inclined to agree.

The rate allowed by PSC amounted to 5.49% on an original cost rate base. Under the evidence presented here and under the principles enunciated in Citizens Telephone Company v. Public Service Commission, Ky., 247 S.W.2d 510, we think a rate of return of not less than 6%, on an original cost rate base, is required to meet the standards of adequacy. The specific service rates which Citizens asked authority to impose would have produced a rate of return of 6.1% for a sample period on the rate base that Citizens advocated. This indicates that the company can live with a rate in the 6% area. We shall direct that PSC allow a sufficient increase of rates to produce a rate of return in the 6% area on the rate base previously fixed by PSC.

■ The appellants suggest that PSC allowed as proper certain operating expense items, such as the A. T. & T. license contract fees, which PSC might well have disallowed, and that if those expenses were eliminated the rate of return under the rates approved by PSC would be 6.35%. However, we believe the PSC order must be reviewed by the courts on the basis of what it actually was—not what it might have been. See Securities and Exchange Commission v. Chenery Corporation, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626; Burlington Truck Lines v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207.

■ We find no reasonable basis for the position PSC has attempted to take in these proceedings with respect to the Metropolitan Area. In the hearing PSC asked Citizens to produce data as to its "earnings" in the Metropolitan Area alone, separate from its other areas of service in Kentucky, and in its brief on this appeal PSC argues that it was justified in denying any rate increase for the Metropolitan Area because Citizens did not provide the

requested data. Certainly PSC was not trying to treat the Metropolitan Area as a separate *rate-base unit*, because in all other phases of the proceedings PSC treated the entire Kentucky service area as the rate-base unit. We need not decide whether different service areas in Kentucky, such as the separate major cities, or those cities together as a metropolitan community, could under some circumstances be treated as separate rate-base units. Historically the Citizens service area has been treated as a single unit, and PSC was not trying here to establish several different rate-base units.

We are at a loss to understand why PSC wanted separate data as to the Metropolitan Area "earnings" (whatever was meant by that word). Conceivably, *after* a rate base and a proper rate of return had been established, cost and earning data with reference to different parts of the company's overall service area might have become relevant for the purpose of fixing rate *classifications* and to prevent *discrimination* in rates among the different localities. But here the data apparently was not sought for *rate classification* purposes, but for some vague purpose related to *rate of return*. It is our opinion that PSC did not show a valid reason for seeking the separate data for the Metropolitan Area.

(On the points last discussed—separate rate-base units and rate classifications—see 43 Am.Jur., Public Utilities and Services, sec. 109, pp. 648, 649; 43 Am.Jur., Public Utilities and Services, secs. 178 to 184, pp. 689 to 693; Annotation, 4 A.L.R.2d 596; Pioneer Telephone & Telegraph Co. v. State, 64 Okl. 304, 167 P. 995, L.R.A.1918C, 138; Michigan Bell Telephone Co. v. Odell, D.C., 45 F.2d 180).

To the extent that it sets aside the order of the Public Service Commission the judgment is affirmed; to the extent that it directs further proceedings in conformity with the opinion of the circuit court it is reversed with directions to enter judgment directing the Public Service Commission to enter a new order in conformity with this opinion, such new order to be based on the existing record but with opportunity for the parties to present arguments.