## PIONEER TELEPHONE & TELEGRAPH CO. v. STATE et al.

No. 7488—Opinion Filed Feb. 12, 1918.

Rehearing Denied Jan. 13, 1919.

(177 Pac. 580.)

(Syllabus.)

1. **Telegraphs and Telephones — Joinder of Lines.**

The right of one telephone company to connect its lines with that of another company, given under section 5, art. 9, of the Constitution, implies a mechanical union of the lines so as to admit of the convenient passage of messages from one to the other, but does not include the right to compel business intercourse between two competing companies to the detriment of either. The purpose is to establish and maintain means for a continuous transmission of messages for the benefit and convenience of the public.

2. **Same — Power of Corporation Commission.**

The Corporation Commission is without authority to arbitrarily require two competing telephone companies to establish a physical connection between their exchanges and toll lines, under rules and regulations which are unfair and which work a discrimination against the subscribers of either company.

Appeal from State Corporation Commission.

Proceeding by A. E. Darnell and others against the Pioneer Telephone & Telegraph Company. From an order of the Corpora-

tion Commission, the Telephone & Telegraph Company appeals. Modified and affirmed.

S. H. Harris, Claude Nowlin, and J. R. Spielman for plaintiff in error.

S. P. Freeling, Atty. Gen., John B. Harrison, Asst. Atty. Gen., and Paul A. Walker, Counsel for Corporation Commission, for defendants in error.

OWEN, J. This is an appeal by the Pioneer Telephone & Telegraph Company from an order of the Corporation Commission requiring this company to establish physical connection with the Deer Creek Mutual Telephone Company in the town of Arapaho.

The action was begun by A. E. Darnell and other citizens of the town of Arapaho filing a complaint before the Corporation Commission, alleging, in substance, that both telephone companies are public transmission companies for hire, and each, under franchise, operating a public telephone system and exchange in the town of Arapaho; that the Pioneer Company operates a long-distance toll line in and through said town serving the public with long distance telephonic connection but refuses to receive and transmit long-distance messages over the lines of the Mutual Company; that no physical connection has been made of the companies in said town, by reason of which the public, in order to be accommodated with local and long-distance service, is compelled to rent the phones of both companies, the rates thereof being thereby duplicated and burdensome.

The relief prayed is that these companies be required to make physical connection with their lines and exchanges in said town, and the Pioneer Company be compelled to receive and transmit long-distance messages from and over the lines of the Mutual Company without delay or discrimination.

It appears from the evidence that the Mutual Company had 35 subscribers to its exchange living in town, and 18 rural subscribers connected with the exchange; that it owned clear lines to the towns of Clinton and Butler; that its rates for exchange service were lower than the rates of the Pioneer Company, and no charge was made to its subscribers for long-distance or toll-line service; that its exchange was established in Arapaho about five years prior to the filing of the complaint; that the exchange and toll lines of the Pioneer Company were established in and through the town prior to the time the Mutual Company established its exchange; that the Pioneer Company had toll lines extending throughout the state, and connected with other companies reaching the principal cities in the surrounding states.

The commission, after hearing the testimony, entered the following order:

"It is therefore ordered that the Pioneer Telephone & Telegraph Company and the Deer Creek Mutual Telephone Company establish physical connection with each other in the town of Arapaho for the purpose of handling toll traffic, and the expense of making such connection shall be borne equally by the two companies. The basis for toll-line charges to and from the Deer Creek Mutual Telephone Company, either in its local exchange area or on rural lines connected therewith, shall be the same as the rate to subscribers of the Pioneer Telephone & Telegraph Company in Arapaho. The Deer Creek Mutual Company shall receive 12½ per cent. of all of the toll collected for toll traffic which originates or terminates on the Deer Creek Mutual Telephone Company lines or rural lines connected therewith."

Appellant complains that this order is unreasonable and unjust, and amounts to the taking of the property and property rights of the Pioneer Company without compensation. Counsel for appellant construe this order to require connection between the two exchanges, so that any message coming into the exchange of the Mutual Company, over a local or long-distance wire, may be switched onto the lines of the Pioneer Company and transmitted to its destination. In proof that the commission so construed it, we are referred to the language of Commissioner Watson, who presided at the hearing. In response to an inquiry made by counsel for appellant as to whether the complainants demanded both long-distance connection and an interchange of local service, the commissioner said:

"If we give one, we will give both. I want to say, gentlemen, that the commission concedes the fact no town in this state has any business with two exchanges anyway, and we have been doing what we could to consolidate these exchanges where we found two exchanges in any town. * * * We are going to do everything we can to consolidate the exchanges in this county, without involving loss on either, if it can be avoided. But at any rate we are not going to stop until we get the consolidation of the exchanges in these towns where they have two, where one can do all the business, and, if we have to go to the Legislature to get more authority in January, we are going to do it. We are determined there shall not exist two exchanges in any town in this state. * * * It's a double tax upon the people of the towns and communities, that they shall not be called upon to bear. If you people can't get together

and agree upon some terms that are reasonable to both, why we will have to take the thing in hand and force it, and I want to tell you now you just as well make preparation to get together, because we are going to force it."

Section 5, art. 9 (221 Williams' Ann.), of the Constitution, reads as follows:

"All telephone and telegraph lines, operated for hire, shall each respectively, receive and transmit each other's messages without delay or discrimination, and make physical connections with each other's lines, under such rules and regulations as shall be prescribed by law, or by any commission created by this Constitution, or any act of the Legislature, for that purpose."

Section 18 of this article (234 Williams' Ann.) authorizes the commission to regulate and control transmission companies in all matters relating to the performance of their public duties, and require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just.

The question presented here is whether, due regard being had to the facts, the physical connection of the lines and exchanges of these two telephone companies, under the rules and regulations provided in the order, is a reasonable and just public service and convenience. The language of the Constitution requiring a physical connection of the lines is mandatory, but it follows, naturally, that such connection must be made so as not to destroy property rights, and so as to be reasonable and just to both companies.

The right of one telephone company to connect its lines with that of another company implies no more than a mechanical union of the lines, so as to admit of the convenient passage of messages from one to the other, and does not include the right to compel business intercourse between two competing companies to the detriment of either company. The lines are to be connected, not the companies, and the purpose is to establish and maintain means for a continuous transmission of messages for the benefit and convenience of the public.

It was never intended by this section to compel two companies, competing for the same business, to make such physical connection between their lines and exchanges as would permit one company to have the benefit and use of the equipment and system of the other, to its detriment and a discrimination against its subscribers. On the contrary, it was meant to require such a mechanical union of the lines as would constitute a continuous transmission of the messages for the public convenience, and without destroying the property rights of either company. A connection, under rules and regulations that amount to the destruction of property or that works a discrimination against the subscribers of either exchange would amount to the taking of property without due process of law. The state, of course, has the power to take private property for public use under its rights of eminent domain; but this can only be done for a fair consideration. The section of the Constitution contemplates the physical connection and the regulation of such union under the police powers of the state.

The Mutual Company, furnishing free toll-line service to its subscribers to the various towns reached by its lines, by adding the toll-line facilities of the Pioneer Company, by securing a physical connection with the Pioneer Company's exchange, would be given such an advantage over its competitors as to bring about the condition the commissioner seemed to have in mind when he frankly stated that his purpose was to eliminate one of the exchanges. The subscribers to the Pioneer Exchange would not have free toll-line service to the points reached by the Mutual lines. One of the principal reasons for having the exchange service of either line is the toll-line facilities made convenient by the exchange service. When a subscriber to the Mutual Company, having free toll-line service over that company's lines, is given access to the Pioneer toll lines at its usual rates, 12½ per cent. of which is retained by the Mutual Company, while the subscriber to the Pioneer exchange is not given free toll-line service of the Mutual Company, the advantage to the Mutual exchange at the expense of the Pioneer Company is apparent.

In the case of Pioneer Telephone & Telegraph Co. v. State, 38 Okla. 554, 134 Pac. 398, this court, in an opinion by Mr. Justice Williams, in construing the section, said:

"This language is mandatory, the only limitation being that the rules and regulations, as prescribed by the commission, shall be reasonable and just."

Counsel for defendants in error rely upon this case as controlling authority to uphold the order in the instant case. It might be so considered, so far as holding the language mandatory, ordering a physical connection of the lines. The facts in that case were different in this: There the local company was not engaged in a long-distance business, and the order went no further than

to require the long distance line to transmit the long-distance messages of the local exchange. In that case it was said by Mr. Justice Williams:

"The questions is not presented as to competitors in the same line of business, to wit, two rival exchanges, furnishing local service to their subscribers. The question here is whether the appellant, being engaged in furnishing long-distance service as a public service corporation, is to be required to furnish long-distance service to the local exchange, that is not engaged in a toll-line or long-distance business."

The Mutual Company, in the instant case, is engaged in a long-distance, or toll-line business, and is competing with the Pioneer Company with its rival local exchange in the town of Arapaho.

The case of City of Milbank v. Dakota Central Telephone Co., 37 S. D. 504, 159 N. W. 99, also relied upon by counsel for appellees, is not in point, except in so far as it was held in that case that the enforced connection of the two telephone lines was within the police powers of the state. In that case the Central Company was carrying on a long-distance business throughout Dakota, including the city of Milbank, and had a local exchange in the city. The other company had a local exchange in the city, but was not carrying on a long-distance business.

In the case of Pacific Telephone & Telegraph Co. v. Eshleman, 166 Cal. 640, 137 Pac. 1119, 50 L. R. A. (N. S.) 652, Ann. Cas. 1915C, 822, the California Supreme Court reversed an order of the Railroad Commission requiring the physical connection of telephone companies where the facts were very similar to the facts in the instant case, holding that to require a physical connection between the long-distance lines and the local lines of the companies, competing for the same business, both local and long-distance, with no provision for compensation being first made, the only compensation provided for being an apportionment of tolls, as in the order under consideration here, constitutes a taking of such company's property without compensation, and in violation of the federal Constitution; that such order was an exercise of the powers of eminent domain, and not of the police power. There it appeared the Glenn and Tehama Companies made demand upon the Pacific Company for such connection as would enable their subscribers to have the long-distance service of the Pacific Company through the local exchange of the other company. The court, in disposing of the case and overruling the order, said:

"It is not an order that the Pacific Company should develop and extend its service to meet the existing demands of the public, * * * an order which would certainly in its nature be regulatory, and a compliance with which would meet every possible demand which the public could rightly urge. But it is an order compelling the Pacific Company to permit a connection between its long-distance lines and the local lines of the petitioning companies, under which, by the use of the switchboards, operators, and lines of the Pacific Company, its property and its agencies, the petitioning companies and their subscribers should have the same rights to all the long-distance instrumentalities of the Pacific Company as its subscribers and patrons. That the order is not primarily designed to benefit the public is made plain from the fact that it is not an order directing the Pacific Company to make betterments and extensions for the service of the public. * * * That it is primarily designed to benefit the rivals of the Pacific Telephone & Telegraph Company in the local business of the two counties is plain from a consideration of the circumstances. * * * It would appear, therefore, that it is not the necessities of the public, but the necessities and benefits to the rival companies, which have prompted an order devoting the property of the Pacific Company to the uses of the rival companies."

The Constitution of this state gives the Corporation Commission the same power of control of telephone and railroad companies. Transportation and transmission companies are put on exactly the same basis relating to the performance of their public duties and furnishing reasonable facilities and conveniences. These duties are to the public. No duties are required to competitors greater than that required to the public. This court, in the case of A., T. & S. F. Ry. Co. v. State, 27 Okla. 565, 112 Pac. 1010, in an opinion by Mr. Justice Kane, said:

"The Corporation Commission is without authority to arbitrarily require a railway company to establish stations and switching facilities at places not required by public convenience or necessity."

In the case of State of Washington ex rel. v. Fairshild et al. 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863, the Supreme Court of the United States reversed a judgment of the State Railroad Commission requiring trackage connection between competing railway companies at certain points for the interchange of business. The statute in pursuance of which that action was begun, authorizes the Railroad Commission to order addi-

tional trackage or sidings and that additional connections be made. Mr. Justice Lamar, in delivering the opinion of the court, said:

"The question in each case must be determined in the light of all the facts, and with a just regard to the advantages to be derived by the public and the expense to be incurred by the carrier."

Under the Constitution of Colorado every railroad has a right to intersect, cross, and connect with any other railroad in that state. In the case of A., T. & S. F. R. Co. v. D. & N. O. R. Co., 110 U. S. 667, 4 Sup. Ct. 185, 28 L. Ed. 291, the Railroad Commission of Colorado required a physical connection and interchange of business between these two railroads. The Supreme Court of the United States, in an opinion by Chief Justice Waite, in reversing the order among other things, said:

"The manner in which its business must be done by the line will depend, not alone on the connection of its track with that of the line, but upon the duty which the line as a carrier owes to it as a customer. No usage was established which required one of the component companies of a connecting through line to grant to a competitor of any of the other companies the same privileges that were accorded to its associates, simply because the tracks of the competing company united with its own and admitted of a free and convenient interchange of business. * * * So in section 4 there is nothing specially important to the present inquiry except the last sentence: 'Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad.' Railroad companies are created to serve the public as carriers for hire, and their obligations to the public are such as the law attaches to that service. The only exclusively constitutional question in the case is, therefore, whether the right of one railroad company to connect its road with that of another company, which has been made part of the fundamental law of the state, implies more than a mechanical union of the tracks of the roads, so as to admit of the convenient passage of cars from one to the other. The claim on the part of the Denver & New Orleans Company is that the right to connect the roads includes the right of business intercourse between the two companies, such as is customary on roads forming a continuous line, and that, if the companies fail or refuse to agree upon the terms of their intercourse, a court of equity may, in the absence of statutory regulations, determine what the terms shall be. * * * To our minds it is clear that the constitutional right in Colorado to connect railroad with railroad does not itself imply the right of connecting business with business. The railroad companies are not to be connected, but their roads.

A connection of roads may make a connection in business convenient and desirable, but the one does not necessarily carry with it the other. The language of the Constitution is that railroads may 'intersect, connect with, or cross' each other. This clearly implies to the road as a physical structure, not to the corporation or its business."

Counsel for appellees cite the case of Wisconsin M. & Pac. R. R. v. Jacobson, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194, as supporting their position. In that case an order requiring a physical connection between two railroad companies was held to be not a taking of property, but a regulation in favor of the interests and for the accommodation of the public. There the public demanded a physical connection of the tracks for the convenience of the public. It appeared there were large quantities of wood along one road and none on the other, and that great numbers of cattle raised along one line, to reach the market, must be shipped several hundred miles farther than would be necessary by reason of the connection. The court, in upholding the order, said:

"We think this case is a reasonable exercise of the power of regulation in favor of the interests and for the accommodation of the public, and that it does not, regard being had to the facts, unduly, unfairly, or improperly affect the pecuniary rights or interests of the plaintiff in error."

That part of the order requiring physical connection is affirmed, but, since the order requires a connection under regulations which we do not consider fair and just to the Pioneer Telephone Company, the order will be modified, and the case remanded to the commission, to make and enter a proper order, so as to enable either company to transmit the toll messages of the other company, under such rules and regulations as may be fair and just to both companies.

All the Justices concur, except THACKER, J. not participating.