**STANDARD TELEPHONE & TELEGRAPH CO. v. STATE et al.**

No. 24619. May 12, 1936.

Rowland & Talbott, for plaintiff in error.

Holmes Baldridge, for defendants in error.

OSBORN, V. C. J. This is an appeal by the Standard Telephone & Telegraph Company from certain orders of the Corporation Commission regarding telephone service furnished by said company to the citizens of Skiatook.

On April 19, 1932, the citizens of Skiatook filed a petition with the commission protesting against the type of telephone equipment furnished by the company to the citizens of said town. It appears that the system in use was the magneto type telephone system, and the citizens sought to have installed the common battery system. A hearing was had on the complaint, and on October 27, 1932, the commission entered its findings of fact and made its order No. 6007 requiring that the company install a common battery system within the town of Skiatook "within a reasonable time from the date of the order." The company gave notice of appeal from said order, and the commission on its own motion promulgated its order No. 6243 reducing rates for telephone service rendered to the citizens of Skiatook in certain particulars, which will be hereinafter referred to. The company appeals from both orders.

We will consider first order No. 6007, requiring the installation of the common battery system. The record shows that a number of citizens were called as witnesses and testified that they had no complaint to make against the service rendered by the company, but felt that they were entitled to have the more modern common battery equipment. One B. Richardson, a telephone engineer for the commission, made an investigation of the system at the direction of the commission and was called as a witness. He testified, in part, as follows:

"I looked into the system and made a study also with the view of installing a common battery plant. The system is well maintained and giving fair service for a magneto system. I did not have any service complaint. On investigation we found that the plant is in a pretty poor condition. That is, it is because of its life. It is old. Being well maintained, that does not reflect in the service. The outside plant is in such condition that I am of the opinion that it would not carry a common battery system. To install a common battery system, build the feature equipment especially made by the manufacturers at the present time would be a comparatively small matter and a fairly reasonable matter. I believe the change could be made for about $10,000, not counting the recovery. But that would be where the complaint is at present without taking care of it. It would be out of the question of getting a common battery exchange there for $10,000 at the present time with the plant like it is. * * * Q. What was your figure on the installation of a common battery system? A, I think for less than $10,000, outside of the plant. Q. You have not made any definite figure or have no exhibits reflecting the cost? A. No, sir. A common battery board is not like a magneto board. They are built in units, but a common battery board would have to have some engineering costs to such an extent that it would be rather difficult to get the cost."

The commission, among oher things, found as follows:

"That the present hand-cranking magneto type telephone has long since been atrophied; that the existence of such a telephone system is likely to materially impede the progress and growth of Skiatook in its struggle to compete with nearby towns of approximately the same size and population and which have either a common battery or automatic type telephone system. * * * The evidence further disclosed that there is no complaint upon the part of the citizens of Skiatook with respect to the service rendered by respondents on the present automatic hand-cranking telephone system as such."

This particular finding is challenged by the company as being contrary to the evidence. In this connection a certain exhibit was introduced in evidence showing that 54 towns within the state with telephone exchanges serving 300 or more telephones are using the magneto type telephone system. The record shows that the company acquired the system at Skiatook in 1928, and in 1929 there were more than 400 telephones in service, and from that date there was a gradual decrease in the number of telephones comprising the system, and that on January 1, 1933, there were only 229 telephones in use. It conclusively appears that the finding of the commission that the magneto type telephone system is atrophied, out of date, and obsolete is contrary to the undisputed evidence. On the other hand, it appears that said system is in common use in the smaller exchanges. Although the evidence does not disclose the exact cost of the installation of the common battery system, it is shown that an expenditure of more than $10,000 would be required. An expenditure of such amount in modernizing a telephone exchange serving the number of telephones shown to be served in this case is unjust and unreasonable.

After the promulgation of the above order it was made to appear that there would be some delay before it would be placed into effect, either by an appeal to this court or by the financial inability of the company to comply with the order. On April 6, 1933, the commission issued its order reducing rates pending the installation of the new system. At that time there was evidence before the commission from which the commission might find all the facts necessary to the establishment of a rate, that is, the rate base, the revenues earned, the amount required to be set aside as operating expenses, and to take care of retirements, depreciation, amortization, and obsolescence and the necessary annual net rate of return to be allowed. The rates in effect at that time were as follows:

| | |
|---|---|
| One party business telephone | $3.00 per mo. |
| One party residence telephone | 2.00 per mo. |
| Multi-rural telephone | 1.50 per mo. |
| Business extension telephone | 1.00 per mo. |
| Residence extension telephone | 0.50 per mo. |

The following table discloses the elements considered by the commission and the method of computation used to fix the new rates:

| | |
|---|---|
| Physical Properties, including the overheads of engineering and superintendence, omissions and contingencies, interest during construction, materials and supplies, etc. (Ex. A) | $18,349.00 |
| Cash working capital (Ex. A) | 300.00 |
| Incidental expenses of securing franchise, rights of way, legal services, subscribers' contracts, etc. (Ex. A) | 1,000.00 |
| Ledgers, forms, accounting, materials and supplies, etc. (Ex. A) | 200.00 |
| Rate Base | $19,849.00 |

Entitled to Earn:

| | | |
|---|---|---|
| For Return (8% on $19,849.00) | $1,587.92 | |
| For depreciation (4% on $28,529) | 1,141.16 | |
| Maintenance expense, traffic expense, commercial expense, general and miscellaneous expenses, uncollectibles, taxes, etc. | 6,780.00 | |
| Total annual requirements | $9,509.08 | 9,509.08 |
| Gross revenues (12-month period ending Jan. 1, 1932, based upon telephones in use as of that date) | | 10,837.00 |
| Excess | | $ 1,327.92 |

Disposition of excess (based upon stations as of January 1, 1932):

| | |
|---|---|
| 87 business telephones reduced 50c per month or $6.00 per year | $522.00 |
| 142 one-party residence telephones reduced 25c per month or $3.00 per year | 426.00 |
| 63 multi-rural telephones reduced 25c per month, or $3.00 per year | 189.00 |
| Total distributed excess | $ 1,137.00" |

The company contends that the commission was without jurisdiction to make an order reducing rates for the reason that no complaint had been made that the rates were excessive; that the complaint filed related only to the type of system in use. In the case of Western Telephone Corporation v. Corporation Commission, 176 Okla. 540, 56 P. (2d) 899, we held that the power of the commission to prescribe rates is inherent in the constitutional and statutory authority of the commission and is not limited to complaints filed.

It is urged that the commission erred in the determination of the rate base, which is the present fair value of the used and useful property at the time the rate is fixed, upon which a utility is entitled to earn a fair return. In this connection the evidence is conflicting. The value of the property was estimated by expert witnesses. The witness testifying for the company placed a higher estimate of value upon the property than the commission's witness. The record shows, however, that the finding of the commission on this point is amply supported by the evidence.

Complaint is also made of the method used to estimate the revenues of the company. In this connection the revenues for the calendar year 1931 were used as a basis for estimating possible future revenues of the company. It is claimed that allowances should have been made for losses in business sub-

 

sequent to the year 1931. This proposition was before the court in the case of Western Telephone Corporation v. Corporation Commission, supra, in which this method of estimating possible future revenues was approved. For further discussion on this point we refer to the opinion in that case.

Complaint is made of the allowance of 4 per cent. per annum for depreciation. The record shows that the properties were constructed in 1907, and occasional extensions and improvements were made from time to time. The average age of the properties on the date of hearing was approximately 12 years. The witness Richardson found that the plant was in 62.5 per cent. condition, which shows an accrued depreciation over the average life of 12 years of 37.5 per cent., or a depreciation of 3.1 per cent. per year. The expert testifying for the company estimated that the plant was in 66.65 per cent. condition, which shows an accrued depreciation of 33.35 per cent. over the average life of 12 years, or an annual depreciation of 2.8 per cent. It therefore appears that the allowance of 4 per cent. per annum for depreciation is amply sustained by the evidence.

Allowance of 8 per cent. per annum on the rate base for net return under the facts disclosed in this case is fair and reasonable.

The commission's order No. 6007, requiring the installation of a new telephone system is vacated, and its order No. 6243, reducing rates, is affirmed.

McNEILL, C. J., and RILEY, BUSBY, WELCH, CORN, and GIBSON, JJ., concur. BAYLESS and PHELPS, JJ., absent.