## OKLAHOMA TRANSPORTATION CO. v. STATE et al.

No. 32656. Feb. 11, 1947.

*177 P. 2d 93.*

Richardson, Shartel, Cochran & Pruet, Frank A. Chilson, John Barry, and Holloway & Holloway, all of Oklahoma City, for plaintiff in error.

Busby, Harrell & Trice and Orel Bus-by, all of Ada, and Anglin, Stevenson & Huser, of Holdenville, for defendant in error Denco Bus Lines, Inc.

James G. Welch, of Oklahoma City, for Corporation Commission of Oklahoma.

BAYLESS, J. This is an appeal by the Oklahoma Transportation Company (hereafter referred to as O.T.C.) from an order of the Corporation Commission granting a certificate of public convenience and necessity authorizing Denco Bus Lines (Denco) to operate a class "A" motor carrier passenger service from Atoka, Oklahoma, to Oklahoma City via Ada, Tecumseh, and Norman, with "closed doors" between Norman and Oklahoma City. By that term it was meant that applicant would not be permitted to transport local passengers in either direction between Norman and Oklahoma City.

O.T.C. has for many years operated a bus service from Oklahoma City to Ardmore over U. S. Highway No. 77, likewise from Oklahoma City to Fort Smith over U. S. Highways Nos. 270 and 271. Denco has rendered service to the cities and towns in the vicinity of Ada for the past 20 years operating busses which connected with O.T.C.'s busses at various points. Denco's lines radiate out of Ada, making connection with O.T.C. at Seminole, Shawnee, Pauls Valley, and Norman, so that passengers from that vicinity destined for Oklahoma City were required to transfer from Denco to O.T.C. at one of these points. At the time and prior to the granting of the permit complained of, Denco operated a daily bus line from Atoka to Norman, passing through Coalgate, Ada, Asher, Tecumseh, Shawnee, "back hauling" from Shawnee to Tecumseh, and thence to Norman.

On February 28, 1946, the commission granted O.T.C. a class "A" certificate to operate from a point on U. S. Highway No. 77 near Wayne (south of Norman) to Ada over State Highway No. 59. Denco protested the granting of this order but did not appeal therefrom. However,

it served notice at the hearing that it would apply to extend its lines from Norman to Oklahoma City. On March 14, 1946, after first publishing notice of its intent, Denco filed application with the commission for class "A" certificate for through service from Atoka to Oklahoma City via Norman. Six days later, on March 20th, O.T.C. commenced a through service from Ada to Oklahoma City via Wayne, operating four busses daily in each direction. On April 11th Denco was granted a permit for through service from Atoka to Oklahoma City and return, with "closed doors" between Norman and Oklahoma City. Shortly thereafter it commenced the through service, operating five busses daily between Atoka and Oklahoma City.

O.T.C. contends that the requirements of public convenience and necessity were fully met by the service being rendered prior to the commission's last order. It states that O.T.C. was running four round trips daily between Oklahoma City and Ada; that Denco and O.T.C. made a total of 17 connections at Seminole, Shawnee, and Pauls Valley; and that at Norman, O.T.C. and Oklahoma Railway Company ran a total of 47 schedules daily to Oklahoma City; which was ample to handle all passengers that might be offered by Denco. We quote in part from the "Report and Statement" of the commission:

". . . The O.T. protested Denco's application on the grounds that Denco would take away some of its Ada-Oklahoma City business and that Denco would no longer take passengers to Norman for interchange to Oklahoma City.

". . . It should be borne in mind that O.T. had been operating its Oklahoma City service only about two weeks at the time of this hearing. The certificate to operate into Ada was granted O.T. over the bitter protest of the Denco. At that time it was the contention of O.T. that through bus service was needed. It appears to the Commission from the testimony presented in this case that through bus service is needed and that public convenience and necessity require same. . . . To so restrict the Denco and

thus channel all of the Oklahoma City-Ada traffic over to O.T., who incidentally acquired the right to operate into Ada at a very recent date and over the protest of Denco, would be like taking of cream from a bottle, giving it to the O.T. and leaving only the skimmed milk for the Denco.

". . . The Commission takes the view that the granting of authority to O.T. on February 28, 1946, and the granting of authority to Denco on April 11, 1946, to transport passengers between Oklahoma City and Ada was a simultaneous granting of authority to two operators, and therefore the granting of authority to Denco on April 11, 1946, was not a granting of authority over an existing operation."

O.T.C. points out that the traffic manager of Denco made a survey of the number of people traveling on the Denco line from Ada to Oklahoma City between January 1 and March 17, 1946, which showed there was an average of 135 people traveling both ways daily or 67 plus each way; and that its four through schedules from Ada to Oklahoma City and 17 connecting schedules with Denco make a total of 21 busses to transport a maximum of 67 people. This survey does not include cities and towns on the Denco line between Ada and Norman, and therefore does not give the entire picture. Bob Hill, vice president and general manager of O.T.C., testified that O.T.C. carried an average of 18 passengers daily from Ada to Oklahoma City on its through busses. O.T.C. states in its brief that a minimum of 15 passengers is required to pay operating expenses for a trip from Ada to Oklahoma City; that the public which is actually riding daily on motor carriers is being offered more than adequate transportation; that a substantial increase can be taken care of by busses now operating over highways in that area; and that granting of the certificate to Denco is wholly unwarranted. On the other hand, the record shows O.T.C.'s attorney, at the first hearing when the certificate was issued extending O.T.C.'s line into Ada, made the following statement:

"Now, we expect to prove that there

is a need for direct service from Ada into Oklahoma City, . . . The only way the traveling public has to get from Ada to the Capitol at this time is by bus. That service is not adequate at the present time, —that you have to go either to Seminole to Ada through Asher, to Shawnee or Ada to Pauls Valley, change connections and come into Oklahoma City. That these points of change, —the busses that come through there, lots of times or most the time are loaded, no standing room left and passengers from Ada trying to go to Oklahoma City often are stranded in Seminole, and Pauls Valley for hours and often over night. There is no adequate transportation for the traveling public in Ada to Oklahoma City and this application would permit direct bus service from Ada right straight through to Oklahoma City and Oklahoma City right straight through to Ada, and there wouldn't be any changes or anything of that nature."

The evidence shows that a large majority of the passengers traveling from Atoka and Ada, and intervening towns, to Seminole, Shawnee, Norman, and Pauls Valley were destined for Oklahoma City. Denco produced 77 witnesses from cities and towns along the route from Atoka to Oklahoma City. O.T.C. presented four witnesses, all company employees. A majority of the witnesses testified as to the great inconvenience caused by having to transfer from Denco to O.T.C. busses; particularly was this true as to children traveling to and from the Crippled Children's Hospital at Oklahoma City. A considerable number of the witnesses testified the O.T.C. busses were overcrowded and that they would have to stand up from Shawnee or the other various connecting points to Oklahoma City. All of Denco's witnesses testified that the proposed through service would be a great convenience to them and the evidence established that such service would be a great convenience to the general public in the area served by Denco. A considerable number of witnesses testified that O.T.C. discriminated against Denco passengers, that is, when they attempted to board the bus at Oklahoma City, even though at the head of the line, they were required to step out

of line and wait for the second or third bus, which, on some occasions, had caused them to miss connection with the Denco bus. Under Denco's proposed through service the average time en route from Atoka to Oklahoma City is reduced from one to two hours.

47 O.S. 1941 § 166 provides that a class "A" motor carrier shall not operate or furnish service within the state without first obtaining from the Corporation Commission "a certificate declaring that public convenience and necessity require such operation." Article IX, sec. 20 of the Oklahoma Constitution, as amended in 1941, provides:

". . . The review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence . . .""

Hence, the question before the commission and now before this court involves determination of the existence of "public convenience and necessity." In 67 A.L.R. 957 is found this statement:

"The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, or additional service would benefit the general public, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required."

O.T.C. contends that Denco's evidence failed to establish that the extension of its line was a convenience and necessity to the public at large. It bases its argument on the theory that the two lines are competing carriers. This assumption is erroneous. Except as to the city of Ada, Denco is not a competing carrier for the reason that it serves cities and towns and transports passengers through an area not served by O.T.C. The traveling public in this area is entitled to such conveniences as may be reasonable, as much so as is the traveling public in the area served by O.T.C. Denco is willing to provide this service. The evidence in the

record of a general public demand, as distinguished from individual or private demands, for through bus service from Atoka to Oklahoma City is sufficient to justify a finding of the commission that public convenience and necessity require such service. In Oklahoma Union Ry. Co. v. State, 146 Okla. 92, 293 P. 537, the appellee was permitted to extend its bus lines from Sapulpa to Tulsa but without permission to pick up local passengers between those two cities. This extension made it possible for appellee to operate a through line from Oklahoma City to Tulsa. Appellants contended there were already adequate facilities for the traveling public between Sapulpa and Tulsa and therefore no "necessity" for the extension. There was an hourly interurban service between Sapulpa and Tulsa, also a bus line, and a railroad company operated six or seven daily passenger trains between the two cities. This court, in affirming the order of the commission, stated, page 538:

"The Commission evidently took the view from the evidence contained in the record that the traveling public desired this extension of bus service from Sapulpa to Tulsa, and that there was a need for it supported by the demand as expressed by witnesses, and that upon the whole the same was desirable on account of the otherwise required transfer at Sapulpa as applied to through passengers. That transfer was unsatisfactory, annoying, and inconvenient."

In Missouri, Kansas & Oklahoma Coach Lines, Inc., v. State et al., 183 Okla. 3, 81 P. 2d 664, the appellant operated a bus line from Tulsa through Pawnee, Bill's Corner and Perry to Enid. The appellee operated from Seminole to Stillwater. The Corporation Commission granted appellee a certificate to operate from Stillwater through Bill's Corner to Ponca City. Bill's Corner was located twelve miles north of Stillwater. Appellant contended that he should have been permitted to extend his line from Bill's Corner to Ponca City. In denying this contention the court said, p. 666:

"The facts of the Bartonville Case show that appellant had sought to extend its line to Canton, Illinois, thereby giving service from Peoria. It required a transfer of passenger at Orchard Mines. Appellee proposed to furnish through service without the necessity of a change. The court held that under those circumstances the Commerce Commission was fully warranted in granting a permit to the appellee. In this connection see Oklahoma Union Railway Co. v. State, 146 Okla. 92, 293 P. 537.

"In the instant case the evidence shows that Turner, if granted the permit, will be able to furnish through service to Ponca City for all traffic originating at Shawnee and the territory south and east of there. The appellant does not show if such is true that the traffic from Stillwater to Ponca City is more numerous and more important than the through traffic to Ponca City."

In Chicago, R. I. & P. Ry. Co. v. State, 126 Okla. 48, 258 P. 874, the court defined the word "necessity" as used in the act and this definition has been repeatedly followed by the court. It is as follows:

". . . The word 'necessity' means a public need, without which the public is inconvenienced to the extent of being handicapped in the pursuit of business or wholesome pleasure, or both— without which the people generally of the community are denied, to their detriment, that which is enjoyed by other people generally, similarly situated."

In Wabash C. & W. Ry. Co. v. Commerce Commission, 309 Ill. 412, 141 N.E. 212, the term is succinctly defined:

"An improvement which is highly important to the public convenience and desirable for the public welfare may be regarded as necessary."

The court is of the opinion, and holds, that the findings and conclusions of the Corporation Commission are sustained by the law and substantial evidence.

O.T.C. contends its constitutional rights have been violated, and therefore this court should "exercise its own independent judgment as to both the law and the facts" in accordance with the provision of article IX, sec. 20, of the Constitution. The court's decision

would be the same if exercising its independent judgment as to the law and facts. O.T.C. urges:

"The issuance of the order complained of violates the constitutional rights of the protestant in that it, pursuant to certificates issued by the Corporation Commission, invested its funds in property, supplies and equipment to adequately take care of or handle and supply the convenience and necessity demanded by the public . . . Under the motor carrier act, it is and was entitled to protection against ruinous competition."

O.T.C. is in a poor position to complain about ruinous competition. Any competition between the two lines is the result of O.T.C.'s having extended its lines so as to make a competitor of a connecting carrier that had previously co-ordinated its lines and schedules with those of O.T.C.

In the first hearing in which it was granted a permit to extend its line into Ada, it complained of inconvenience to the public, such as having to change connections, overcrowded busses on the O.T.C. lines at the points where the changes were made, and other inconveniences which it now asserts do not exist. Perhaps the O.T.C.'s through service between Ada and Oklahoma City has relieved these inconveniences so far as they apply to the people of Ada, but that would not apply to traffic over other parts of the Denco line.

The commission found: "It is quite possible that such an operation would not be profitable and could not be operated by Denco if they were restricted against transporting passengers from Ada to Oklahoma City." Since O.T.C. has gone into competition with its connecting carrier for the Ada business, the future existence of Denco may well depend upon its being allowed to compete on equal terms, as found by the commission.

The order appealed from is affirmed.