Charles BLAKELEY, dba McLoud Telephone Company, Plaintiff in Error,

v.

The CORPORATION COMMISSION of the State of Oklahoma; Frank Mendonca, a sole trader, dba Mendonca Dairy; and Southwestern Bell Telephone Company, a Corporation, Defendants in Error.

No. 37266.

Supreme Court of Oklahoma.

Oct. 28, 1958.

Rehearing Denied Dec. 23, 1958.

Brown & Verity, by Geo. L. Verity, Oklahoma City, for plaintiff in error.

James G. Welch, Gen. Counsel, T. Earl Curb, Asst. Gen. Counsel, Corporation Commission, Oklahoma City, for defendant in error Corp. Commission.

Leslie L. Conner, Oklahoma City, John Goode, Goode, Goode & Henson, Shawnee, for defendants in error Mendonca Dairy.

PER CURIAM.

This is an appeal by Charles Blakeley, doing business as McLoud Telephone Company, from an order of the Corporation Commission of the State of Oklahoma requiring McLoud Telephone Company and the Southwestern Bell Telephone Company (of Oklahoma City) to furnish Foreign Exchange Telephone Service to Frank Mendonca who owns and operates a large dairy

in the McLoud Telephone Company area. For convenience the parties will be referred to as the "McLoud Exchange", "Bell", and "Mendonca."

The McLoud Exchange is located in McLoud, Oklahoma, twenty-five miles east of Oklahoma City. All long distance telephone, or toll, lines through or out of the Town of McLoud to Oklahoma City are owned by Bell. Thus all telephone communications between Mendonca and his customers in Oklahoma City must traverse the local line of McLoud Exchange from the dairy to the switchboard of McLoud Exchange and there be interconnected with Bell's long distance line, and vice versa if the call originates in Oklahoma City from a customer to Mendonca.

In applying for Foreign Exchange Service Mendonca seeks a permanent connection at the McLoud Exchange switchboard of his local line and Bell's long distance line which runs through McLoud. This would eliminate the necessity of "plugging in" at the McLoud switchboard for each call that goes through and would be equivalent to a direct cross-country line from Bell exchange in Oklahoma City to the Mendonca Dairy.

The Corporation Commission found that Bell was furnishing foreign exchange service to sixty three customers from its exchange in Oklahoma City into twelve different exchanges and that such service is furnished to seven customers from six different exchanges into Bell's exchange in Oklahoma City. Although Bell appeared formally in the proceedings as a respondent it maintained a position of neutrality in the proceeding and has not appealed from the order of the Commission.

In Mendonca's petition for Foreign Exchange Service, filed with the Commission, he alleged that his business is purchasing milk, processing it, and selling it in Oklahoma City at wholesale and retail prices. He further alleged that public necessity and convenience and the necessity of the situation required Mendonca to receive foreign exchange telephone service to be supplied by Bell and McLoud Exchange.

The Commission, in adopting the findings of its Referee, found:

"* * * The evidence and testimony presented by Mr. Frank Mendonca, disclosed that he had been operating this business for more than twenty-five years; that it had grown from a small beginning to a plant and business valued at more than one-half million dollars; that he produces, purchases and processes milk for both wholesale and retail distribution, over a wide area including Oklahoma City, and Shawnee; that his principal source of supply is from 47 dairy farmers residing in the McLoud community. He also testified that he had recently expanded his business in the Oklahoma City area and that in order to meet the competition of two other dairies who are located at Norman and who already have Foreign Exchange Service, the same type of service must be made available to his customers." * * *

"Supporting testimony was offered by nine other witnesses which included Mr. B. S. Graham, Executive Secretary of the Central Oklahoma Milk Producer Association and dairy farmers member of that organization, as well as wholesale and retail customers of the petitioner (Mendonca) in Oklahoma City. The testimony of the dairy farmers and Mr. Graham ostensively (sic) was offered to support petitioners claim that in order to maintain and expand the retail outlet for his dairy products in the Oklahoma City market he must be afforded Foreign Exchange service. They all testified that what benefited the petitioner (Mendonca) would indirectly be of benefit to them. * * *."

The evidence is undisputed that the revenue from dairy farming in the McLoud Exchange area is one of the area's principal sources of income and that Mendonca pays his suppliers of milk approximately $30,000 per month; has from sixteen to twenty employees on his pay roll, and operates twelve dairy trucks. It is also undis-

puted that the farmers receive a better price for milk when it can be sold by Mendonca direct to the consumer in the bottle, rather than when it is sold for cream, or cheese, or other milk products.

The evidence also shows that Mendonca has heretofore been the chief supplier of milk in the towns and communities surrounding the town of McLoud; that his competitors have shown greater activity in selling milk in his normal trade territory and that if he is to continue to render the greatest service to his suppliers and pay top prices for milk he must find an outlet for the sale of bottled milk in Oklahoma City. Mendonca testified that he cannot hold his customers when they are forced to order, or cancel their order for milk, by the use of long distance calls.

The Mendonca Dairy is one of the largest institutions in the McLoud Exchange area, and the economic structure of the community is greatly improved by Mendonca's purchase of raw milk in that area.

■ In McLoud Exchange's brief it is pointed out that in this country we have remarkably fine telephone service because we grant controlled monopolies to telephone utilities and that in return for such monopolies the telephone utilities come under strict regulation of the Corporation Commission. It might be further noted that the right to regulate these "controlled monopolies" is under the police power of the State. 86 C.J.S. Telegraphs, Telephones, Radio, and Television § 74.

In Oklahoma Constitution, Art. IX, § 18, under powers and duties of the Corporation Commission it is provided:

"The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend. * * *."

■ We think there can be no question concerning the Commission's power and authority to require telephone companies to establish and maintain all such services, facilities, and conveniences as may be reasonable and just when public necessity and convenience require it.

In 17 O.S.1951 § 131, in granting, or preserving, for telephone companies a monopoly in their particular areas of service, it is provided in substance that one telephone company may not build a line into an area already occupied by some other telephone company giving similar service *"unless there exists a public necessity therefor, or unless the public convenience requires such construction or operation."* (Emphasis supplied).

In 17 O.S.1951 § 132, the Corporation Commission is vested with jurisdiction to determine whether or not there exists a public necessity and whether the public convenience requires the construction or operation of a line into an area already occupied by another telephone company.

Thus while it is apparent that the Legislature intended that telephone companies should have monopolies in their respective areas it also provided that such monopolies must yield to public necessity and convenience.

■ McLoud Exchange contends that the jurisdiction of the Corporation Commission must, in a case of this nature, be invoked by a telephone company and that in this case the order of the Commission gives Bell a certificate of necessity and con-

venience without Bell having applied for such a certificate, and without a notice and hearing as provided for under the provisions of 17 O.S.1951 § 133. This argument overlooks the powers delegated to the Corporation Commission. In the third paragraph of the syllabus in Standard Telephone & Telegraph Co. v. State, 177 Okl. 88, 58 P.2d 121, 122, this court held:

"The power of the Corporation Commission to prescribe rates is not limited to complaints filed, but is inherent in the authority delegated to the commission."

It is observed that the section of the Constitution, Art. IX, § 18; supra, which gives the Commission the power to prescribe rates also authorizes the Commission to require the establishing and maintenance of public services, facilities, and conveniences. If the jurisdiction of the Corporation Commission can only be invoked by the petition of a utility company then the rights of a petitioning public and the effectiveness of the Corporation Commission as a regulatory body would, in practical effect, be destroyed.

In the case before us Mendonca's petition seeks relief under the Commission's authority to require the telephone companies to render a public service based upon the allegation that public necessity and convenience requires such service.

We hold that the petition filed herein for Foreign Exchange Service, and the notice and hearing given and conducted pursuant to the provisions of section 133, supra, conferred jurisdiction upon the Commission to consider Mendonca's petition for foreign service.

The Commission, in adopting the findings of its Referee, found and concluded:

"1. That the Commission has jurisdiction of the parties hereto and subject matter hereof.

"2. That the telephone service requested by the petitioner is a special service whereby a subscriber in any exchange area may obtain direct or local service from another exchange when certain conditions and requirements are complied with.

"3. That such service cannot be properly or legally offered or furnished except by joint operation and agreement of the two telephone exchanges involved and therefore does not constitute an invasion of the rights of either.

"4. That the Commission has heretofore approved tariffs providing for foreign exchange service.

"5. That the function and purpose of Foreign Exchange service is not similar to long distance or toll service but is deemed to meet the private convenience and needs of a limited number of subscribers, usually engaged in a business or commercial enterprise and is therefore subject to a limited demand.

"6. That the petitioner herein has a need for Foreign Exchange service in order to maintain and expand his dairy business in the Oklahoma City market because his competitors are being furnished that type of service."

Based upon the foregoing findings the Commission ordered McLoud Exchange and Bell to furnish Foreign Exchange Telephone Service to Mendonca in accordance with the tariffs lawfully filed with the Commission by Bell, providing for such service, or in accordance with other joint tariff agreements that may hereafter be approved by the Commission.

The foregoing findings and order present several questions. We seriously doubt that Mendonca's private need for Foreign Exchange Service in order to maintain and expand his dairy business in the Oklahoma City market because his competitors are receiving that type of service, standing alone, would justify the Commission's order. However, this case was presented to the Commission by Mendonca on the theory that public necessity and convenience to the dairy farmers in the McLoud Exchange area, and to the economy of that community, required that Mendonca have foreign

exchange service. It is not disputed that the economy of the McLoud Exchange area leans heavily upon its dairy farming activities. It also appears that to maintain this economy a retail outlet for the sale of milk in Oklahoma City must be established and that this can best be accomplished with a direct connection with Bell's exchange in Oklahoma City.

 Since jurisdiction to determine the question of public necessity and convenience has been placed in the Commission, 17 O.S.1951 § 132, supra, and the Commission has not specifically found that public necessity and convenience exists, the question is posed as to whether this court may determine that question.

As heretofore shown the evidence in support of public necessity and convenience is uncontradicted. Where facts bearing upon the issue of public necessity and convenience are undisputed and lead to no other conclusion but that public necessity and convenience does exist, the ultimate decision to be reached is not a question of fact, but an unmixed question of law. If it were otherwise the rights of parties under the statute (17 O.S.1951 § 132, supra) would depend not upon the law but upon the unguided and unrestrained discretion of men. See Moore v. Clarke, infra. We conclude that where the issue of public necessity and convenience is presented to the Commission in appropriate proceedings and the evidence in support thereof is uncontradicted and leads to the conclusion that public necessity and convenience has been established, this court may disregard the failure of the Commission to so find and hold as a matter of law that public necessity and convenience does exist. In Moore v. Clarke, 171 Md. 39, 187 A. 887, 107 A.L.R. 924, it was held that the decision of the Industrial Commission under the Workmen's Compensation Act may be affirmed by the appellate court if it finds that the ultimate decision was correct notwithstanding the Commission's findings were wrong. We further conclude that public necessity and convenience was established in this case. In reaching that

conclusion we have considered the definition of the word "necessity" as used in the expression "public necessity and convenience." In the third paragraph of the syllabus in Oklahoma Transp. Co. v. State, 198 Okl. 246, 177 P.2d 93, it was held:

"The word 'necessity' means a public need, without which the public is inconvenienced to the extent of being handicapped in the pursuit of business or wholesome pleasure, or both—without which the people generally of the community are denied, to their detriment, that which is enjoyed by other people generally, similarly situated."

In Alabama Public Service Commission v. Crow, 247 Ala. 120, 22 So.2d 721, it was held:

"The word 'necessity', within certificate of public convenience and necessity to operate as a common carrier of passengers, is not used in the sense of being essential or absolutely indispensable but merely that certificate is reasonably necessary for public good."

 It is argued by McLoud Exchange that the order of the Commission authorizes an invasion by Bell of the McLoud Exchange area, contrary to the provisions of 17 O.S.1951 § 131, supra. We have already noted that the statute authorizes an invasion when public necessity and convenience so requires. We think Foreign Exchange Service, where properly supervised, constitutes less invasion (if it is an invasion) than does direct line service. In situations such as we have here Foreign Exchange Service constitutes a very satisfactory substitute for a direct line from the foreign exchange. In this case it tends to maintain the integrity of the McLoud Exchange area and permits McLoud Exchange to realize a profit from the telephone service rendered in its area. In Chillicothe Telephone Co. v. Public Utilities Commission, 163 Ohio St. 398, 126 N.E.2d 917, the court approved the Commission's order directing Foreign Exchange Service and noted that this type of service is growing in volume.

McLoud Exchange contends that the Commission's order constitutes a taking of McLoud Exchange's property and gives it to Bell without due process of law and that the order invades the management rights of the McLoud Exchange.

We do not so find. McLoud Exchange is still in possession of its telephone line and is responsible for its operation and management. It is true the *Commission* found that Foreign Exchange Service cannot be furnished "except by joint operation and agreement of the two telephone exchanges", but this is misleading. There is no joint operation involved. Under the order McLoud Exchange will continue to own and operate that section of the line from its switchboard to the Mendonca Dairy. Bell will own and operate that section of the line from the McLoud Exchange switchboard to Oklahoma City. McLoud Exchange's right of management will not be permitted to limit the right of government to respond to public needs and protect the public welfare. Ex parte Tindall, 102 Okl. 192, 229 P. 125.

It is argued in McLoud Exchange's brief that their property rights are being taken and destroyed; that is, the right to receive the revenues of the toll connection from Mendonca. In this connection our attention is invited to Pioneer Telephone & Telegraph Co. v. State, 71 Okl. 305, 177 P. 580, 581. In the body of the opinion in that case it was said:

"The language of the Constitution requiring a physical connection of the lines is mandatory, but it follows, naturally, that such connection must be made so as not to destroy property rights, and so as to be reasonable and just to both companies. * * *

"* * * A connection, under rules and regulations that amounts to the destruction of property, or that works a discrimination against the subscribers of either exchange, would amount to the taking of property without due process of law."

McLoud Exchange does not point to any authority which holds that his Exchange has a vested right to receive the long distance toll charges. While we think, broadly speaking, Foreign Exchange Service is long distance service we fail to see why a toll charge is the only way to establish a rate for that type of service. In paragraph 2 of the syllabus in Standard Telephone & Telegraph Co. v. State, 177 Okl. 88, 58 P.2d 121, 122, this court held:

"In making rates the Corporation Commission is not limited to any particular theory or method, but should take into consideration all the proper elements pertinent to the particular case."

The Order of the Corporation Commission is affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JACKSON and CARLILE, JJ., concur.

JOHNSON, WILLIAMS and BLACKBIRD, JJ., dissent.